CARRICK *v.* LAMAR.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued January 6, 1886.—Decided January 18, 1886.

In matters which require an executive officer of the United States to exercise judgment or consideration, or which are dependent upon his discretion, no rule will issue for a mandamus to control his action.

Whether the island in the Mississippi River opposite St. Louis, known as Arsenal Island, shall be surveyed and brought into the market is a matter within executive discretion and judgment.

This was an application to the Supreme Court of the District of Columbia for a mandamus to require the Secretary of the Interior to cause a survey to be made of an island in the Mississippi opposite St. Louis. Mandamus being refused, a writ of error was sued out. The facts are stated in the opinion of the court.

*Mr. W. Willoughby* for plaintiff in error.

*Mr. Solicitor-General* for defendant in error.

MR. JUSTICE FIELD delivered the opinion of the court.

This case comes before us on writ of error to the Supreme

Court of the District of Columbia. The petitioner applied for a writ of mandamus against the Secretary of the Interior to order the survey of Arsenal Island, which is situated in the Mississippi River, opposite the City of St. Louis. He represents that he is the head of a family, over twenty-one years of age, and a citizen of the United States; that on the first of September, 1883, he made a settlement in person on the island; that it contains about 230 acres, is ten feet above high-water mark, is not subject to overflow, is suitable for agricultural purposes and subject to preëmption under the laws of the United States; that he inhabited and had improved the land and erected a dwelling-house thereon for the purpose of obtaining a title thereto; that the land is not mineral, has not been reserved by the government and never been surveyed; that there are no improvements on it except such as have been placed by him, and that the General Government has constructed certain embankments and walls, so that the island is now fast and anchored, and not liable to be changed by the action of the river.

He further states that in September, 1883, for the purpose of obtaining a survey of the island, in order that he might avail himself of the rights he had acquired as such settler, he made application, in writing, according to the rules of the Interior Department, to the Commissioner of the General Land Office, for such survey, stating that the island had never been surveyed by the government, and that he was desirous that it should be brought into the market according to the laws of Congress and the regulations of the General Land Office relating to the disposal of lands embraced in fragmentary surveys.

He further states that upon the hearing of the application it was claimed by the City of St. Louis that the island was formerly known as the Quarantine Island, and had been surveyed and set apart to the city under the provisions of acts of Congress of June 13, 1812, and of May 26, 1824, relating to school lands; but that in fact the survey made was of an island above the place now occupied by Arsenal Island, and that no part of the space embraced by that survey is now covered by the present island; and in support of this averment

states that the report made to the Secretary of the Interior by the engineer of the War Department, in charge of the government works in the vicinity, shows that the island is not embraced within that survey, and is the property not of the City of St. Louis, but of the United States.

The Commissioner of the General Land Office rejected the application, but transmitted the papers to the Secretary of the Interior for his examination and instructions. The immediate predecessor of the present Secretary concurred with the commissioner. Upon the defendant's accession to office the application was renewed and rejected. The present petition was then laid before the Supreme Court of the District, which refused the rule upon him. To reverse its judgment and obtain the rule prayed, the case was brought here.

The former Secretary in his opinion adverted to the drifting character of the island, it being alleged to have changed 1700 feet from its position when surveyed; to the works of the government to stay its drifting and give it permanence; and to the title asserted to it by the City of St. Louis. He said that even during the time of a survey what would be a monument and a boundary to-day might require a change to-morrow, and that, therefore, as long as the same causes continued to operate and make the island a mere moving mass of alluvial deposits, it was useless to establish corners and monuments, which would be subject to immediate obliteration.

The application to the present Secretary was accompanied by evidence tending to show that the island was fast and anchored; a review of the previous decision being sought on the alleged ground of error in holding the island to be a moving mass of alluvial deposits. The Secretary declined to review the decision, and further held that it would be improper to order a survey, inasmuch as the War Department, under appropriations for the improvement of the river, was operating upon the island, and it was unknown to what extent or for what purpose the government might require the same in connection with the great public work about which it was engaged.

Without treating the matters set forth in the opinions of the

Secretaries as established facts, enough appears on the face of the petition to show that a survey could not properly have been ordered, and that there was no error in refusing a rule for a mandamus.

It appears that, under acts of Congress, an island situated some distance above the site of the present island, was surveyed and set apart to the City of St. Louis. It is contended that the present island represents the one surveyed; it having been carried down the river by the action of the current. It certainly would be a matter of doubt, requiring for its solution grave consideration, how far the title of the city to the island is affected by this movement. If any doubt may rightfully exist in the mind of the Secretary on the subject, an answer is furnished to the application for a mandamus directing him to order a survey to facilitate the acquisition of that title by others.

It also appears by the petition and the papers to which it refers, and the legislation of Congress, that the goverment is engaged in works connected with the improvement of the river to stop the drifting character of the island and give it stability and permanence. Expenditures largely exceeding any possible return from the sale of the island would seem to indicate that the government designs to appropriate it to special uses, and not to open it to preëmption and settlement. In the absence of positive enactment the Secretary might, therefore, properly withhold any action tending to encourage a settlement there. This consideration alone is sufficient answer to any rule for a mandamus.

It is settled by many decisions of this court, that in matters which require judgment and consideration to be exercised by an executive officer of the government, or which are dependent upon his discretion, no rule for a mandamus to control his action will issue. It is only for ministerial acts, in the performance of which no exercise of judgment or discretion is required, that the rule will be granted. *Decatur* v. *Paulding*, 14 Pet. 497, 499; *United States* v. *Guthrie*, 17 How. 284; *United States* v. *The Commissioner*, 5 Wall. 563; *Litchfield* v. *Register and Receiver*, 9 Wall. 575, 577.

Within this principle there can be no question as to the correctness of the action of the Supreme Court of the District. Its judgment is, therefore,

*Affirmed.*