## RUHM v. UNITED STATES.

### (Circuit Court, D. Tennessee, M. D. April 10, 1895.)

#### No. 3,035.

1. DISTRICT ATTORNEY—EXTRA COMPENSATION.
   Act June 20, 1874, § 3, declaring that no civil officer shall hereafter receive any compensation from the United States, beyond his salary allowed by law, provided that this shall not be construed to prevent the employment and payment by the department of justice of district attorneys, as allowed

by law, for the performance of services not covered by their salaries or fees, gives to a district attorney no new rights to extra compensation, but, at most, merely preserves such as the law theretofore gave.

**2. SAME—RECOVERY OF PENSIONS.**
It being declared the duty of a district attorney, by Rev. St. § 771, to prosecute in his district all civil actions in which the United States is concerned, he is not entitled to extra compensation for conducting a suit to recover a pension fraudulently received.

**3. SAME—EXAMINING TITLE TO POST-OFFICE SITE.**
He cannot recover extra compensation for examining title to post-office site, or clerk hire and travel of clerk in connection with such examination; there being no law allowing special clerk hire in such a case, and district attorneys being required by Act March 2, 1889 (25 Stat. 939), to render all legal services connected with procurement of titles to sites for public buildings.

**4. SAME—SERVICES IN CIRCUIT COURT OF APPEALS.**
He cannot recover extra compensation for services in a case which went to the circuit court of appeals, in performing which he had to go out of his district; for, though performance of such services is not a duty belonging to his office, there is no law authorizing compensation therefor.

**5. SAME—EXPENSES OF DOCKETS.**
If the cost of dockets can be allowed a district attorney, as a proper office expense, it should be allowed out of the fees and emoluments earned for the years during which the expenses were incurred, and not otherwise.

Action by John Ruhm against the United States.

Lee Brock and John Ruhm, Jr., for petitioner.

Tully Brown, U. S. Dist. Atty., and John W. Childress, Asst. U. S. Dist. Atty.

CLARK, District Judge. This suit is brought under the act of congress of March 3, 1887 (24 Stat. 505), to enforce certain claims against the United States. Claimant was district attorney of the United States from May, 1889, to February 1, 1894, for the Middle district of Tennessee. The claims are for expenses incurred and special services rendered during his term of office. The fees sued for are alleged to be for services performed under the direction of the attorney general, not connected with the duties of the office of the district attorney, and not, therefore, covered by the salary and fees belonging to the office. The fees and expenses are (1) for service in what is called the "Williams Pension Case"; (2) expenses and service in the matter of the Clarksville post office; (3) fees in case of Hill et al. v. U. S., before the United States circuit court of appeals for the Sixth circuit; (4) compensation for service in Cumberland River Improvement Cases; (5) fees for service in same cases as preceding; (6) special counsel fee as extra allowance in Porterfield Case; (7 and 8) expenses for certain dockets for use in the district attorney's office.

It is made the duty of the district attorney to defend the government in all suits under the act; and the court is required to state in writing the findings of fact and conclusions of law, and file the same in the cause. It will be well, before taking up the particular claims separately, to bear in mind certain statutes, and the principles established by recent decisions which bear upon the subject. The opinions expressed on the circuits are not in harmony, and those

of the attorneys general are in conflict. 19 Opp. Attys. Gen. 123. This is due in part, probably, to changes in legislation. So far as the subject has been before the supreme court of the United States, the cases are in accord, and give out no uncertain sound. The position taken by claimant is that the fees claimed as special compensation are authorized, and may be allowed, under the proviso to section 3 of the act of congress of June 20, 1874 (18 Stat. 85), which is as follows:

"That no civil officer of the government shall hereafter receive any compensation or perquisites, directly or indirectly, from the treasury or property of the United States beyond his salary or compensation allowed by law; provided, that this shall not be construed to prevent the employment and payment by the department of justice of district attorneys as allowed by law for the performance of services not covered by their salaries or fees."

This section, however, clearly enacts a general stringent rule against any compensation, beyond the salary and fees specifically authorized by law as belonging to the office, and the proviso simply saved from repeal by implication any existing law which allowed the department of justice to pay district attorneys for services not covered by the salary and fees belonging to the office. The proviso occurs in a restrictive act, and affirmatively authorizes nothing. The question is left to depend on the existence of other laws under which the department of justice may act. If a statute existed, authorizing the department to employ and pay for special services, it would by no means follow necessarily that the courts could, in suit, enforce such claim as a general obligation against the government. Examination of the appropriation acts for recent years discloses apparently that it has been the custom of congress to appropriate a sum to the department of justice, and place the same practically under the control and discretion of the attorney general, to be applied as compensation for special services of the district attorneys; and this is referred to by Judge Hanford as having been so since 1889, in Winston v. U. S., 63 Fed. 692. In the absence of specific authority, it could not be maintained, however, that this would authorize the attorney general to contract a debt against the government which could be put in suit, and enforced as a legal obligation. The most that could be said of such practice is that it vests in the attorney general a power, coupled with judicial discretion, under which he might employ and pay for special services in view of the fund at his disposal, but his discretion could not be controlled by the courts. Section 363, Rev. St., authorizes the attorney general to employ counsel to assist the district attorney. Before compensation is allowed, the attorney general must certify that the service was rendered, and could not be performed by the district attorney (section 365), and, by section 368, the attorney general exercises general supervisory power over the accounts of the district attorney. The court has been referred to no statute which distinctly authorizes the employment and compensation of the district attorney for services of the kind now in question. The district attorney is allowed salary at the rate of $200 a year (Rev. St. § 770); and, out of the fees and emoluments of his office, he may be al-

lowed by the attorney general to retain $6,000 a year, besides office expenses (section 835). And the allowance for personal compensation for each calendar year "shall be made from the fees and emoluments of that year and not otherwise" (section 843), and any surplus above what may be retained must be paid into the treasury (section 844), and all fees for which the United States is liable must be paid on settling the district attorney's accounts at the treasury (section 856). The compensation, is liberal. Among the duties which belong to the office of district attorney by law are those enumerated in section 771, Rev. St., to prosecute all crimes and offenses and all civil actions in which the United States is concerned; and, by section 355, upon application of the attorney general the district attorney is required to furnish any assistance or information in his power, in relation to title of public property within his district. Other parts of the Revised Statutes are set out in full in the opinion of the court in Gibson v. Peters, 150 U. S. 342, 14 Sup. Ct. 134, and here referred to, for the purpose of this case, without repeating the same. Mr. Justice Harlan, delivering the opinion, says:

"It ought not to be difficult, under any reasonable construction of these statutory provisions, to ascertain the intention of congress. A distinct provision is made for the salary of a district attorney, and he cannot receive, on that account, any more than the statute prescribes. But the statute is equally explicit in declaring, in respect to compensation that may be 'taxed and allowed,' that he shall receive no other than that specified in sections 823 to 827, inclusive, 'except in cases otherwise expressly provided by law.' It also declares that no officer in any branch of the public service shall receive any additional pay, extra allowance, or compensation, in any form whatever, for any service or duty, unless the same is expressly authorized by law, or unless the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation. No room is left here for construction. It is not expressly provided by law that a district attorney shall receive compensation for services performed by him in conducting suits arising out of the provisions of the national banking law, in which the United States or any of its officers or agents are parties. Without such express provision, compensation for services of that character cannot be taxed, allowed, or paid. Nor can the expenses of the receivership be held to include compensation to the district attorney for conducting a suit in which the receiver is a party, for the obvious reason that the statute does not expressly provide compensation for such services. Congress evidently intended to require the performance by a district attorney of all the duties imposed upon him by law, without any other remuneration than that coming from his salary, from the compensation or fees authorized to be taxed and allowed, and for such other compensation as is expressly allowed by law, specifically, on account of services named."

And in U. S. v. Bashaw, 152 U. S. 436, 14 Sup. Ct. 638, construing Rev. St. §§ 838, 3085, under which the district attorney was to receive for expenses and services in certain prosecutions such allowance as the secretary of the treasury might deem just and reasonable, it was held that an action could not be maintained by the district attorney for services and expenses until the secretary of the treasury first determined what sum was just and reasonable. Mr. Chief Justice Fuller, in delivering the opinion, said:

"But, without further remark on this branch of the case, it must be admitted that even if the rulings of the department were erroneous, and its practice not controlling,—upon which we express no opinion,—whatever sum was

to be paid was left to be determined by the secretary of the treasury, as he should deem reasonable and just, and this involved the exercise of judgment and discretion on his part. The courts cannot control, though in proper cases they may direct, the exercise of judgment or discretion in an executive officer. In this case, as we have said, the exercise of discretion was not properly invoked, and the party had no right to ask the court to substitute its judgment for the judgment of the secretary."

In U. S. v. Shield, 153 U. S. 91, 14 Sup. Ct. 735, Mr. Justice Jackson, speaking for the court, said:

"Fees allowed to public officers are matters of strict law, depending upon the very provisions of the statute. They are not open to equitable construction by the courts, nor to any discretionary action on the part of the officials."

In respect to claims of the kind now considered,—by public officials for special personal compensation or expenses,—it is clear that nothing like an implied obligation can be relied on, and that, claimants must distinctly point out a statute clearly authorizing the claim. The cases just cited are recent, and clearly establish this proposition, and are absolute authority for this court, and consonant with reason and sound public policy. Under equitable construction, these claims would rapidly assume immense proportions. Whatever may be the practice of the heads of departments, when the claim is put in suit the question is one of strict legal right. It is the purpose of congress, clearly disclosed in the statutes referred to, that compensation for service and expenses for any given year shall be paid out of the fees and emoluments of that year, and the same rule obtains as to expenses of any year to be met by appropriations for such year. This prevents large accumulation of claims going over against appropriations in other years. And if such claim can be allowed, in view of the positive provisions of Rev. St. §§ 834, 843, it should be shown that a reasonable effort was made to have the claim allowed and settled at the proper time, as the delay, to an extent, discredits the claim. The elements necessary to entitle a claim of this kind to allowance are well stated by Atty. Gen. Garland (19 Op. Attys. Gen. 125). He says:

"From these authorities it may be derived that the elements necessary to justify the payment of compensation to an officer for additional services are, that they shall be performed by virtue of a separate and distinct appointment authorized by law; that such services shall not be services added to or connected with the regular duties of the place he holds; and that a compensation, whose amount is fixed by law or regulation, shall be provided for their payment. See Stansbury v. U. S., 8 Wall. 34."

Without pursuing the general subject further, the items of the account are now taken up and passed upon:

Item 1 is claimed as fee for conducting a suit to recover a pension fraudulently received. This suit must have been in the courts of the district for which claimant was district attorney. It was his duty, as such official, under section 771 of the Revised Statutes, to attend to this suit, and he is entitled to no extra compensation therefor. Certain files and correspondence are referred to, but these were not offered on the hearing; and statements of the witness on this, as well as other items, consist of conclusions merely, and give no facts in detail, with dates, so that the court may fully

understand the case. So that, apart from the legal objection, I would hold that this item is not sustained by satisfactory proof.

Second item claimed consists of fee of $250, and clerk hire and travel of clerk in regard to title to post-office site at Clarksville; the service being an examination of title. The proof is here, again, meager. There is no law authorizing special clerk hire in a particular case like this, and none allowing the fee. This post-office site is within the Middle district, and this examination of title was a duty attached by law to the office of district attorney. Rev. St. § 355. And the act of congress of March 2, 1889, 25 Stat. 939 (1 Supp. Rev. St. p. 698), provides, among other things, "that hereafter all legal services connected with the procurement of titles to site for public buildings, other than for life saving stations and pier-head lights, shall be rendered by United States district attorneys." "Provided further, that hereafter, in the procurement of sites for such public buildings, it shall be the duty of the attorney-general to require of the grantors in each case to furnish, free of all expenses to the government, all requisite abstracts, official certifications, and evidences of title that the attorney-general may deem necessary." This item is therefore disallowed.

Item 3 is for fee in a suit which went to the United States circuit court of appeals. I quite agree with the ruling of Judge Hanford in Winston v. U. S., 63 Fed. 690, that no compensation is provided by law for such services, although it is true that as claimant went out of his own district, it was not a duty belonging to his office to perform such service. It is said the attorney general allowed $200, arbitrarily fixing half thereof for each of the years 1892 and 1893, presumably as part of the fees and emoluments received for those years. Here, again, for want of facts, it is difficult to understand just what did take place. There being no law which authorizes this compensation, the action of the attorney general is conclusive, and cannot be controlled or set aside by the courts. While this question was reserved in U. S. v. Bashaw, supra, I think there is little or no doubt what the answer must be. Schloss v. Hewlett, 81 Ala. 270, 1 South. 263; Carrick v. Lamar, 116 U. S. 423, 6 Sup. Ct. 424. Whether the attorney general could lawfully allow the claim at all is a question not calling for decision, as the case is presented. The claim was not allowed generally, but only as payable in a particular way, and not otherwise. It was agreed in argument that claimant earned and received the maximum compensation allowed by law during the years he was district attorney, except the month of January, 1894, and for this month claimant says he received $205.

Items 4 and 5 are disallowed. What was said in regard to item 2 applies to these, and need not be repeated.

I have been referred to no law providing for the compensation claimed in item 6. The service was a duty clearly belonging by law to claimant's office, and he was entitled to no extra compensation.

Items 7 and 8 are not warranted by any law of which I am aware. No authority from the department to supply these dockets is shown. If it could be allowed as a proper office expense, this should have

been done out of the fees and emoluments earned for the years during which the expenses were incurred, and not otherwise. These, as stated, exceeded the limit of compensation allowed by law.

The result is that I find in favor of the government, and against claimant, on every item in the claim. The petition will therefore be dismissed, with costs. Ordered accordingly.