# UNITED STATES ON THE RELATION OF ALASKA SMOKELESS COAL COMPANY *v.* LANE, SECRETARY OF THE INTERIOR, ET AL.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 36. Argued October 14, 1919.—Decided November 10, 1919.

The Act of April 28, 1904, § 1, c. 1772, 33 Stat. 525, provided that the locator of unsurveyed coal land in Alaska "shall have opened or improved a coal mine;" upon an application for patent the Secretary of the Interior construed this as requiring that the work done evince a purpose to open or improve a producing mine; and, examining the undisputed facts as to the work relied on, which consisted of more or less superficial excavations exposing coal, found that it was done for prospecting purposes and that it did not satisfy the statute. *Held*, not arbitrary even if erroneous; and not subject to revision by mandamus. P. 552.

*Held*, further, that the Secretary's discretion in the matter was not foreclosed by rulings in earlier cases, as to what constitutes the opening or improvement of a mine, said to have been relied on in the making of the locations, but the effect of which is found not to be inconsistent with the decision complained of. P. 553.

46 App. D. C. 443, affirmed.

THE case is stated in the opinion.

*Mr. Dean Burkheimer*, with whom *Mr. Charles E. Shepard, Mr. James R. Caton, Mr. Stanton C. Peelle* and *Mr. C. F. R. Ogilby* were on the brief, for plaintiff in error.

*Mr. Assistant Attorney General Nebeker*, with whom *The Solicitor General* was on the brief, for defendants in error.

MR. JUSTICE McKENNA delivered the opinion of the court.

Petition for mandamus to require the Secretary of the Interior and the Commissioner of the General Land Office

to approve and pass to patent the application of the peti- tioner for certain coal claims, or to show cause why they have not done so.

Respondents replied that they are constituted by law the sole agents of the Government in the administration and disposal of the public lands by and through the means appointed by Congress and have exclusive jurisdiction to determine the validity of all claims or applications to enter or acquire any part of them, and that the discharge of that duty involves judgment and discretion.

And further replied that petitioner sought to acquire title to the coal claims under the Act of April 28, 1904, c. 1772, 33 Stat. 525, and the Act of May 28, 1908, c. 211, 35 Stat. 424, by virtue of the locations set out in the petition. That the locations came on to be heard and that they, respondents, after considering all of the evidence and applying the law thereto, found and determined that the locations involved were invalid, the locators not having opened or improved any mine or mines of coal on any of the tracts of land in controversy as required by the cited statutes, and that petitioner was not entitled to purchase the same, and thereupon respondents in the exercise of their discretion and judgment rejected the application.

Hence they prayed that the rule against them be dis- charged and the petition dismissed.

Petitioner demurred to the reply on the ground that it did not set forth any substantial or legal defense. The demurrer was overruled and petitioner electing to stand upon it, the rule to show cause was discharged and the petition dismissed. The judgment was affirmed by the Court of Appeals.

The question in the case, therefore, is direct, that is, the power of the Land Office under the cited statutes and the facts recited in the petition. This power, we may say at the outset, necessarily is something more than minis- terial, the mere yielding to and registry of any demand,

and yet, on the other hand, not arbitrary, without statutory direction or regulation by settled rules and principles. In other words, the Land Office is like any other tribunal—its institution and purpose defining and measuring its power, the determining elements being those of fact and law, upon which necessarily judgment must be passed.

What are the elements of fact and of law in the present case? As set forth in the petition they are these:

Sections 2347 to 2352 of the Revised Statutes provide for the entry of vacant coal lands, 160 acres to an individual, 320 acres to an association, who have *opened and improved*, or shall "*open and improve,* [italics ours] any coal mine or mines upon the public lands" (§ 2348).

These sections were extended to Alaska by an act passed June 6, 1900, [c. 796, 31 Stat. 658] and the latter act was amended by the Act of April 28, 1904, *supra,* § 1 of which provides "That any person or association of persons qualified to make entry under the coal-land laws of the United States, who shall have *opened or improved* [italics ours] a coal mine or coal mines on any of the unsurveyed public lands of the United States in the district of Alaska, may locate the lands upon which such mine or mines are situated. . . . "

Section 2 of the act provides for the application for and issue of patent.

The Act of May 28, 1908, provides for the consolidation of claims and their inclusion in a single claim. It is otherwise of no importance.

It will be observed that the only substantial difference between the sections of the Revised Statutes and the act extending them to Alaska is that by the former the right of location is granted to one or those "who have opened *and* improved" a mine or mines, and by the latter the grant is to one or those "who shall have opened *or* improved" a mine or mines.

Petitioner in great volume asserts locations under the

Act of April 28, 1904, to which locations it has succeeded. The facts concerning them are not in dispute; but whether what was done constituted an opening or improvement of mines and constrained a decision other than that given by the Land Office, is in dispute.

Eight locations were made, all of which were conveyed by the asserted locators to petitioner in March, 1909. Surveys were made of the locations, which surveys were duly examined and filed in the proper land office in Alaska; and in 1909 petitioner paid to the Treasurer of the United States ten dollars for each acre surveyed, in the aggregate $9,905.74, and made application to the then Secretary of the Interior through the local land office for a patent, tendering due proof of the locations of each applicant. Notice was posted.

April 26, 1912, at the local land office (Juneau), under the direction of the Commissioner of the General Land Office, proceedings were instituted against the application of petitioner upon the ground, among others, that neither of the claimants prior to making the locations or at any time thereafter and prior to filing notice of the locations, opened or improved any mine or mines of coal on any of the tracts of land as required by the Act of April 28, 1904.

Proofs were taken upon the charges and the register and receiver sustained them and decided and recommended that the application for a patent be rejected.

Upon an appeal to the Commissioner the decision of the local officers was approved after a circumstantial review of the case; and again upon appeal from the Commissioner's decision, by the Secretary of the Interior.

All of the officers decided that the acts of Congress contemplated as a basis of a valid location the opening and developing of a producing mine of coal and that work performed upon a claim for prospecting purposes does not fulfill the requirement. And that such was the character of the work done upon the claims in question was the de-

duction of the officers. "Shallow surface cuts and openings" the work was denominated, and not made "for the purpose of the opening or improving of a producing coal mine or mines."

The characterization, purpose and effect thus ascribed to the work of the claimants are contested and it is insisted that the amount and effect of the work done constituted an opening and improving of mines and constrained an opposite conclusion and judgment from that of the Land Office, and it is insisted, indeed, that a contrary conclusion was constrained not only by the provisions of the statutes but by previous rulings of the department, under the assurance of which the locations were made and thereby acquired the quality of vested rights to be recognized by the issue of patent as a matter of course— an irresistible right, therefore, having legal remedy in mandamus. It is hence insisted that "the respondent [Secretary of the Interior] and his said subordinates have erred, not in the facts, but in their interpretation and construction of the acts of Congress and of the law pertaining to coal mines in or under public lands of the United States in Alaska, and to the rights of location, application and patent thereof by locators and their assigns . . . and thereby exceeding his and their powers and jurisdiction."

The contention is repeated in petitioner's brief in various ways and illustrations. Cases besides are cited with the assertion that in such situation there is no room for the exercise of "discretion" but that it is the imperative duty of the Secretary to issue a patent, the right to it having become vested.

Undoubtedly there may be cases in which rights had actually accrued and nothing remained to the Secretary but their recognition, and counsel have collected and urged such as they deem in point; [1] but the present case lacks

---

[1] *Cudney* v. *Flannery*, 1 L. D. 165; *M. K. & T. Ry.* v. *Buck* (L. D. unreported); *Miner* v. *Mariott*, 2 L. D. 709; *Milne* v. *Ellsworth*, 3 L. D.

their essential condition.  The decision of the local land
officers and that of the Commissioner and Secretary dis-
prove the assumption that counsel make that there was
only an interpretation and construction of the acts of Con-
gress.  On the contrary there was a painstaking considera-
tion and review of the evidence and a determination of its
probative strength, and the deduction was that what was
done was for prospecting purposes merely and did not sat-
isfy the requirements of the acts of Congress—a purpose
to open or improve a mine or mines.  And necessarily
there is a difference in the purposes, a difference between
a mere discovery or exposition of a vein of mineral and its
development.  Counsel's contention confounds the differ-
ence and insists that it is established by the rulings in
prior cases in the department that a mine is opened or im-
proved by an "actual excavation of the earth, whether by
open cut or tunnel, so as to expose a vein of coal, which is
the coal mine."  And this, it is contended, has become a
principle of decision and has the insistent quality of *stare
decisis*—commanding a specific conclusion, superseding
by its automatism any discretionary function in the land
officers.

It is not necessary to review the cases.  It is enough to
say that they have not the inflexibility ascribed to them.
And this can be illustrated.  Counsel speak of exposition
of a vein by a "cut or tunnel."  How deep or extensive
must either be to invoke the principle?  And is the prin-
ciple confined to such or is it applicable whatever the kind
or extent of the work—by any disturbance of the surface
or without any disturbance if the vein be above the sur-

213; *Henry W. Fuss,* 5 L. D. 167; *Oliver* v. *Thomas,* 5 L. D. 289; *Watts* v.
*Forsyth,* 5 L. D. 624; *Williams* v. *Loew,* 12 L. D. 297; *James B. Weaver,*
35 L. D. 553; *Roy McDonald,* 36 L. D. 205; *Oliver* v. *Bates,* 36 L. D.
423; *Bertram C. Noble,* 43 L. D. 75; *Fisher* v. *Heirs of Rule,* 43 L. D.
217; *Siletz Indian Lands,* 42 L. D. 244; *Rough Rider and other Lode
Mining Claims,* 42 L. D. 584.

face? Manifestly judgment in all cases must be exercised
—judgment not only of the law but what was done under
the law, and its sufficiency to avail of the grant of the law.

In *Riverside Oil Co.* v. *Hitchcock,* 190 U. S. 316, it was
said that Congress has constituted the Land Department
the administrator of the public lands and for the discharge
of this duty invested it with judicial functions which are
not subject to review by injunction or mandamus. This
was repeated and applied in *Ness* v. *Fisher,* 223 U. S. 683.

Counsel contest the application of these cases and dis-
tinguish them from that at bar by the difference between
ministerial and judicial action, and assert "that the Sec-
retary has essentially altered the law by converting the
essential terms of it, upon which our rights are based, to
terms of another meaning, and that that is an arbitrary
act which the courts can control and overrule." If the
accusation were true the conclusion might follow; but the
accusation is not true. We rest on this declaration. It
would extend this opinion too much to trace through the
ingenuity of counsel's reasoning in a very long brief and
the citation and analysis of many cases the distinction they
rely on, that is, the distinction between formal and dis-
cretionary action. Undoubtedly there is that distinction.
*Lane* v. *Hoglund,* 244 U. S. 174. But where there is dis-
cretion, as we think there is in this case, even though its
conclusion be disputable, it is impregnable to mandamus.
*Riverside Oil Co.* v. *Hitchcock* and *Ness* v. *Fisher, supra.*

*Judgment affirmed.*