LANSDOWN et al. v. FARIS, United States District Judge.

No. 378, Original.

Circuit Court of Appeals, Eighth Circuit.

July 7, 1933.

Samuel A. Ettelson, of Chicago, Ill. (Leonard B. Ettelson, of Chicago, Ill., on the brief), for petitioners.

Edward J. White, of St. Louis, Mo. (Thomas T. Railey, of St. Louis, Mo., on the brief), for respondent.

Before STONE, GARDNER, and SANBORN, Circuit Judges.

STONE, Circuit Judge.

The Missouri Pacific Railroad Company filed its petition in the Eastern District of Missouri for reorganization under the provisions of section 77 of the Bankruptcy Act, as added by the Act of March 3, 1933, § 1 (11 USCA § 205). On March 31, 1933, the court (Judge Faris) approved the petition as properly filed under section 77. In that order, he directed the debtor (Missouri Pacific Railroad Company), broadly, to continue operation of its properties and to file monthly statements of assets and liabilities with a summary of revenues and expenses. The order reserved jurisdiction to amplify, extend, limit, or modify the order and specifically the jurisdiction to appoint trustees under section 77.

Although the Interstate Commerce Commission had made an order selecting a "Panel of Standing Trustees," under the section, on March 30, 1933, Judge Faris had no knowledge thereof until several days after the above order had been made. On May 6, 1933, B. W. Lansdown and many others, claiming to be creditors of the debtor, filed (by leave) a "petition" for the appointment of a temporary trustee or trustees from the above panel. Upon the same day, Judge Faris en-

tered an order denying such petition upon the ground, stated in the order, that "the appointment of a trustee is not a mandatory requirement with respect to procedure under section 77 of the Bankruptcy statute, and that a trustee or trustees should not be appointed in these proceedings except for good cause shown, and no such cause appearing from the petition under consideration. * * * "

Subsequently, these petitioners applied to the Supreme Court for leave to file a petition for mandamus against Judge Faris to compel appointment of a trustee or trustees. We are informed by counsel for petitioners, and it seems conceded, that this leave was denied without prejudice to apply to this court. Such application has been made, the leave allowed, the petition filed, a show cause order issued, and a response thereto filed by Judge Faris.

█ The response raises several issues. Some of these we will dispose of briefly to get down to the crucial matter involved. The first of these is that the remedy of appeal is open to petitioners and, therefore, the extraordinary writ should be denied. Undoubtedly, there is a discretion in the allowance of extraordinary remedies (Guthrie v. Harkness, 199 U. S. 148, 156, 26 S. Ct. 4, 50 L. Ed. 130, 4 Ann. Cas. 433), and that discretion will be exercised against the extraordinary remedy where an ordinary remedy, such as appeal, is open to the petitioner (Ex parte Riddle, 255 U. S. 450, 451, 41 S. Ct. 370, 65 L. Ed. 725; Ex parte Nebraska, 209 U. S. 436, 440, 28 S. Ct. 581, 52 L. Ed. 876), but this rule is qualified by the exception that the rights of the petition can be fully protected through the ordinary procedure. If such protection is not afforded, the extraordinary remedy may be allowed (Ex parte Abdu, 247 U. S. 27, 28, 38 S. Ct. 447, 62 L. Ed. 966; In re Winn, 213 U. S. 458, 465–467, 29 S. Ct. 515, 53 L. Ed. 873; In re Grossmayer, 177 U. S. 48, 20 S. Ct. 535, 44 L. Ed. 665). The situation here brings this case within the exception. If it be the duty of respondent to appoint trustees, this property should not be left in other hands during the delay necessary to an appeal.

Respondent challenges the position of petitioners as creditors of this debtor. There is no record here from which we can determine this matter. Without at all determining this status of petitioners, we think the fact that respondent permitted them to file their petition and thereafter passed upon the merits thereof, coupled with our conclusion that this writ should not issue, are sufficient for us to treat petitioners, for the purposes of this action, as qualified to file such petition.

Respondent contends that, even if section 77 required him to appoint a trustee upon approval of the petition filed by the debtor, yet such appointment must be from a panel selected by the Interstate Commerce Commission, and that, at the time the order of March 31st was made, he had no knowledge of such a panel. There might be force in this if that order were here in question. It has none where the order, here involved, was entered on petition for such appointment when respondent was fully apprised of the panel selected by the Commission.

█ The important issue in this action is whether respondent was under a mandatory duty to appoint a temporary trustee or trustees upon approval of the petition filed by the debtor. While petitioners charge that the refusal of respondent to make such appointment "constituted an abuse of judicial discretion and was a clear and palpable violation of law," their main reliance is placed on the contention that such appointment was mandatory. The issue here is whether such appointment was mandatory or discretionary. If it be mandatory, the writ should issue (Garfield v. United States, 211 U. S. 249, 261, 29 S. Ct. 62, 53 L. Ed. 168); if discretionary it should not (Interstate Commerce Comm. v. Waste Merchants Ass'n, 260 U. S. 32, 34, 43 S. Ct. 6, 67 L. Ed. 112; United States ex rel. Alaska Smokeless Coal Co. v. Lane, 250 U. S. 549, 555, 40 S. Ct. 33, 64 L. Ed. 1135; United States ex rel. Carrick v. Lamar, 116 U. S. 423, 6 S. Ct. 424, 29 L. Ed. 677). Determination of this issue is to be found in the requirements of section 77, under which this debtor petition is filed. A painstaking examination of this section leaves no room for doubt that there is no mandatory duty upon respondent but that the appointment of trustees thereunder is discretionary.

This section contains a comprehensive plan for reorganization of railroads. A portion of this plan deals with control of the property of the debtor (railroad) during the reorganization thereunder. There is a provision (section 77 (a) of the act, 11 USCA § 205 (a), that the court approving the petition of the debtor "shall, during the pendency of the proceedings under this section and for the purposes thereof, have exclusive jurisdiction of the debtor and its property wherever located." An agency for exercising the control clearly implied by this jurisdiction is supplied through provision (section 77(c), of

the act, 11 USCA § 205(c), for a "panel of standing trustees qualified for such service to be selected and designated in advance by the commission" (Interstate Commerce Commission). The provision governing the action of the court as to appointment of trustees is: "Upon approving the petition as properly filed the judge (1) may temporarily appoint," from the above panel, "a trustee or trustees of the debtor's estate" who shall have power, among other things, "to operate the business of the railroad corporation" and (2), after notice of a hearing for that purpose, "may make permanent such appointment, or may terminate it and may, in the manner herein provided for the appointment of trustees, appoint a substitute trustee or substitute trustees, and in the same manner may appoint an additional trustee or additional trustees. * * * *" It will be noted that all through the above quotations the action of the court is governed by "may." This word, in ordinary meaning, carries no thought of compulsion —it is permissive or power giving and not at all compelling, discretionary, and not mandatory. Farmers' & Merchants' Bank v. Fed. Res. Bank, 262 U. S. 649, 662, 43 S. Ct. 651, 67 L. Ed. 1157, 30 A. L. R. 635; Terre Haute & I. R. Co. v. Indiana, 194 U. S. 579, 588, 24 S. Ct. 767, 48 L. Ed. 1124. While this ordinary meaning will be given to that word "unless it would manifestly defeat the object of the provisions" of the statute (United States v. Thoman, 156 U. S. 353, 359, 15 S. Ct. 378, 380, 39 L. Ed. 450; Thompson v. Lessee of Carroll, 22 How. 422, 434, 16 L. Ed. 387), such words sometimes are construed as mandatory where the clear intention of the legislative body requires such meaning (Farmers' Bank v. Fed. Res. Bank, 262 U. S. 649, 662, 43 S. Ct. 651, 67 L. Ed. 1157, 30 A. L. R. 635; United States v. Thoman, 156 U. S. 353, 359, 15 S. Ct. 378, 39 L. Ed. 450). If this were all of the language on this matter in this section we would be inclined to think there might be doubt as to the meaning of this word, because the section contemplates that the court shall assume jurisdiction over the property and because it is a very unusual situation where a court assumes such jurisdiction and leaves the active control of the property in the owner or any one not an officer of the court. But there is other language in this section upon this subject which leaves no doubt as to the meaning we must give this word.

Further on in this subsection (c) it is provided that "The debtor, or the trustees *if appointed*" (italics added), prepare lists of creditors, stockholders, and claimants with the amounts and character of their debts, claims, and securities. Obviously, these lists are to be prepared *after* approval of the petition filed by the debtor, and this language clearly contemplates that trustees may not be appointed at the time the lists are made. In the same connection is a provision that these lists shall be open to inspection of interested parties "upon application to the debtor or trustees, *as the case may be*." This is another clear indication that the section contemplates that there may be no trustees at times, necessarily, considerably after approval of the above petition. These provisions as to lists are entirely inconsistent with a duty to appoint trustees "upon approving the petition as properly filed." It may be said that the requirement is not to appoint trustees immediately "upon approving the petition," but that it is mandatory to do so as soon as it can be reasonably done. The provision for a "temporary" trustee or trustees and the later permanent trustee or trustees certainly must mean that there is to be decided promptness in appointing the temporary trustees, if there is a mandatory duty to appoint trustees at all. The situation that a considerable period after approval of the petition must necessarily pass before these provisions as to lists are operative and the inescapable conclusion that there may not be trustees during that period is directly opposed to the thought that trustees *must* be appointed promptly after approval of the petition. But this is neither all nor the strongest expression of what the Congress meant.

The sole purpose of this entire section is to afford opportunity for reorganization of railroad companies. The broad method provided is for the working out of a plan of reorganization which will meet the approval of interested parties, the Commission and the court. When such plan has been so approved, nothing remains but the carrying into effect of that plan. An essential feature of the execution of the plan is disposition of the property of the debtor in accordance therewith. This feature is dealt with in section 77 subsection (j), of the act (11 USCA § 205(j). Leaving off the last sentence of that subsection, it is as follows: "Upon the confirmation of the plan the property dealt with by the plan, when transferred and conveyed to the debtor or other corporation or corporations provided for by the plan, *or if no trustee or trustees have been appointed* when held by the debtor pursuant to the plan, shall, as the court may direct, be free and clear of all

claims of the debtor, its stockholders and creditors, except such as may consistently with the provisions of the plan be reserved in the order confirming the plan or directing such transfer and conveyance, and the court may direct the *trustee or trustees, or if there be no trustee or trustees the debtor,* to make any such transfer and conveyance, and may direct the debtor to join in any such transfer or conveyance made by the trustee or trustees." (Italics added.) It is impossible for this language to be otherwise understood than clearly contemplating that there might *or there might not* be a trustee or trustees in control of the property when it came time to turn it over in execution of the plan. There is no reconciling such situation with a mandatory duty to appoint trustees.

There is yet more. The last sentence of this subsection deals with the termination of the entire proceeding. It is: "Upon the termination of the proceeding a final decree shall be entered discharging the trustee or trustees, *if any,* making such provisions as may be equitable, and closing the case." (Italics added.)

The situation thus expressed bearing on the duty of the judge to appoint trustees must be summarized as follows: The judge "may" appoint such; during the period between the approval of the petition and confirmation of the plan, there may or may not be trustees; when the plan is confirmed and the property to be turned over, there may or may not be trustees; when the case is terminated, there may or may not be trustees. Such a situation is irreconcilable with a mandatory duty to appoint trustees. It accords perfectly with a discretion to appoint trustees.

Petitioners urge two matters against the conclusion just stated. The first of these is that the District Court possessed no powers of adjudication or administration, except such as are conferred upon it (generally or as a court of bankruptcy) by statute; that no power to conduct the operation of railroads has been so conferred except as provided in the Bankruptcy Act; that such power in that act is conferred only by section 77; that such section is to be construed in the light of other provisions of said·Act; that section 2(5) of the act (11 USCA § 11(5) empowers the judge to conduct the business of bankrupts "for limited periods by receivers, the marshals, or trustees, if necessary in the best interests of the estates"; and that the situation of this debtor's property is such as to "render the immediate appointment of such trustee or trustees imperatively necessary." Subsection (n) of section 77 of the act, 11 USCA § 205(n) provides that: "In proceedings under this section and·consistent with the provisions thereof, the jurisdiction and powers of the court, the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and his property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition was filed." We do not examine or determine whether the above power under section 2 of the act (11 USCA § 11) is operative under section 77 (11 USCA § 205) or is displaced thereby. Supposing, for the purposes of this case, that section 2 is operative, we are met by the difficulty that operation of a property under section 2 (5) is thereunder and also under section 2 (3) of the act, 11 USCA § 11 (3), only to be when such is "absolutely necessary, for the preservation of estates" of bankrupts. Badders Clothing Co. v. Burnham-Munger-Root D. G. Co., 228 F. 470 (C. C. A. 8); In re Oakland Lumber Co., 174 F. 634 (C. C. A. 2);. T. S. Faulk & Co. v. Steiner, Lobman & Frank, 165 F. 861 (C. C. A. 5). Obviously, the determination of such necessity involves the exercise of judicial discretion. In re Hinc-Watt Mfg. Co., 290 F. 902, 904 (C. C. A. 7); In re Cash-Papworth Grow-Sir, 210 F. 24, 25 (C. C. A. 2). That discretion may be reviewed, but exercise of discretion is not reviewable in mandamus (citations above).

The second matter urged by petitioners is that the debates in Congress on section 77 show the intention that appointment of trustees under that section should be mandatory. Before we can examine and give weight to Congressional debates in construing this statute we are met by certain established rules of construction. The first of these is that in seeking the meaning of a statute resort must first be made to the language of the statute (U. S. v. Standard Brewery, 251 U. S. 210, 217, 40 S. Ct. 139, 64 L. Ed. 229; Caminetti v. U. S., 242 U. S. 470, 485, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168), and this must be done "whatever may have been in the minds of individual members of Congress" (Merritt v. Welsh, 104 U. S. 694, 702, 26 L. Ed. 896). In examining that language we are to take words in their common meaning (Caminetti v. U. S., 242 U. S. 470, 485, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F,

502, Ann. Cas. 1917B, 1168; McBroom v. Scottish Inv. Co., 153 U. S. 318, 323, 14 S. Ct. 852, 38 L. Ed. 729), and are to examine all of the language of the statute (McBroom v. Scottish Inv. Co., 153 U. S. 318, 323, 14 S. Ct. 852, 38 L. Ed. 729; Washington Market Co. v. Hoffman, 101 U. S. 112, 116, 25 L. Ed. 782). If that language is plain and, as so construed, the law is within the power of Congress, "the sole function of the courts is to enforce it according to its terms" (Caminetti v. U. S., 242 U. S. 470, 485, 37 S. Ct. 192, 194, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168); it is the "duty" of the courts so to do (U. S. v. Standard Brewery, 251 U. S. 210, 217, 40 S. Ct. 139, 64 L. Ed. 229), and they "have no choice but to follow it, without regard to the consequences" (Comm'r of Immigration v. Gottlieb, 265 U. S. 310, 313, 44 S. Ct. 528, 68 L. Ed. 1031). In that situation, "the duty of interpretation does not arise" (Caminetti v. U. S., 242 U. S. 470, 485, 37 S. Ct. 192, 194, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168), and this is true, even though reliance is placed upon reports of committees of the Congress (Standard Fashion Co. v. Magrane-Houston Co., 258 U. S. 346, 356, 42 S. Ct. 360, 66 L. Ed. 653; Wis. R. R. Comm. v. C., B. & Q. R. Co., 257 U. S. 563, 589, 42 S. Ct. 232, 66 L. Ed. 371, 22 A. L. R. 1086; Caminetti v. U. S., 242 U. S. 470, 489-490, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168). These rules of construction are not mere academic precepts. They go as deeply as the division of our form of government into three branches. It is the duty of the legislative branch to write the law. It is the duty of the judicial branch to take the law as so written. Whenever the judiciary changes that law—through construction or otherwise—it invades a domain prohibited to it and reserved solely for the legislative branch. U. S. v. Ewing, 184 U. S. 140, 149, 22 S. Ct. 480, 46 L. Ed. 471. We have followed the above rules of construction. We have looked first to the language of this entire section 77; we have taken the words, material here, in their ordinary meaning; we have reached the conclusion (for reasons above given) that this language is clear. There is no room for further construction, and our only duty is to declare the meaning as we think it clearly is. The way is not open for us to examine the debates in Congress upon this section.

The petition for the writ must be denied, and, therefore, dismissed.