# UNITED STATES *v.* STANDARD BREWERY, INCORPORATED.

## ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF MARYLAND.

# UNITED STATES *v.* AMERICAN BREWING COMPANY.

## ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF LOUISIANA.

Nos. 458, 474.   Argued December 11, 1919.—Decided January 5, 1920.

The War-Time Prohibition Act prohibits the use of grains, fruits, and other food products in the manufacture of "beer, wine, *or other intoxicating* malt or vinous liquor for beverage purposes," until the conclusion of the present war, etc.   *Held,* that the word "intoxicating" qualifies the terms preceding, thus excluding from the prohibition beer which is not in fact intoxicating. P. 217.

The act sought to prevent the manufacture of intoxicating liquors because their use might interfere with the consummation of the declared purposes,—to conserve the Nation's man-power and increase efficiency in producing war materials. P. 219.

Rulings of the Treasury Department holding beer containing but one-half of one per cent. of alcohol taxable under revenue laws but not involving the consideration of intoxicating quality, *held* irrelevant in the construction of the War-Time Prohibition Act. *Id.*

The question what percentage of alcohol is enough to constitute a beverage intoxicating within the meaning of the War-Time Prohibition Act is not left by that statute to the determination of the Internal Revenue Department, and its decisions in that regard, though entitled to respect, cannot enlarge the statute so as to make conduct criminal under it. *Id.*.

A construction of an act of Congress which might render it unconstitutional is to be avoided if possible. P. 220.

*Quære:* Whether Congress under the war power could prohibit the manufacture and sale of non-intoxicating beverages? *Id.*

An indictment must charge each and every element of the offense. P. 220.

The court cannot say, as a matter of law, that a beverage containing not more than one-half of one per cent. of alcohol is intoxicating. *Id.* 260 Fed. Rep. 486, affirmed.

THE cases are stated in the opinion.

*The Solicitor General* and *Mr. Assistant Attorney General Frierson* for the United States:

This act was passed under the special war powers of Congress. Its primary purpose was the withdrawal of man-power and foodstuffs from nonessential employment and their devotion to employment necessary for the successful conduct of the war. For this Congress could prohibit the manufacture of nonintoxicating as well as intoxicating beverages. What was done was to place a ban upon certain beverages, whose well-known large production and consumption constituted a heavy drain upon both the labor and food resources of the country. Doubtless, for this reason, and also because they were regarded as injurious to man-power, needed both at home and at the front, the purpose was to class generally, as nonessential, alcoholic beverages. Accordingly, the act prohibits by name the best-known and most largely consumed beverages of this class, generally recognized as more or less intoxicating; and, to embrace other similar but less well-known beverages, there were added the general words "or other intoxicating malt or vinous liquor."

The only way to give effect to these words is to say that whatever beverages come within the commonly understood meaning of beer and wine are prohibited, and the prohibition is then extended, by general words, to other beverages which are similar to beer and wine with respect to being malt or vinous and also with respect to their alcoholic content or intoxicating qualities. The word

"intoxicating" can scarcely be said to have a very definite meaning.   It is ordinarily defined to mean: Producing intoxication or feelings like those of intoxication; exhilarating; exciting, maddening, or stupefying with delight.   (Standard Dictionary.)

But men will differ about what is exhilarating or exciting or intoxicating.   Experts differ as to what per cent. of alcohol suffices to render a beverage intoxicating.   It is a well-known fact that what will make one man drunk will have no effect upon another, and a drink which, at one time, may seem not to affect a man, may, at another time, make the same man drunk.   A law whose enforcement depended upon the determination by juries of such a question would rest upon a most insecure foundation, and anything like a uniform administration of it would be impossible.   Hence, the States in passing prohibition laws have always enumerated by name the best-known alcoholic or intoxicating liquors and added general language to include other similar beverages.   Congress, in this act, has followed the same course.   Beer usually is admittedly an intoxicating beverage and is so classed in the public mind, whether a particular quantity of it will make a particular man drunk or not.   To say that the Government must prove in each case that the beer involved is, in fact, intoxicating would make the efficient enforcement almost if not quite impossible.

Under the rule *ejusdem generis* the meaning of general words may take color from the words used in the enumeration which they follow.   But there is no rule under which words of a specific meaning used in an enumeration are to be given a different meaning by reason of general language following them and intended to describe other articles or persons.   The rule in question leads to the conclusion that any malt or vinous liquor which is intoxicating in the sense that beer and wine are intoxicating is prohibited; but it can not be so applied

as to exclude any beverage which would ordinarily be included under the word "beer." The intention was to prohibit all beverages which are commonly known as beer. The courts of the various States have almost uniformly given this construction to similar language. *United States* v. *Cohn*, 2 Ind. Terr. 474, 492, 501; *State* v. *Ely*, 22 S. Dak. 487, 492–493; *La Follette* v. *Murray*, 81 Ohio St. 474; *Fuller* v. *Jackson*, 97 Mississippi, 237, 253–256; *Extract & Tonic Co.* v. *Lynch*, 100 Mississippi, 650; *Marks* v. *State*, 159 Alabama, 71; *In re Lockman*, 18 Idaho, 465, 469; *Brown* v. *State*, 17 Arizona, 314.

In *United States* v. *Chase*, 135 U. S. 255, the general expression "writing" was given color from the specific words used in the preceding enumeration "book, pamphlet, picture, paper," which were held to imply a "publication" even without reference to the use of that word in the general language following the enumeration. When the amended statute came before the court it was not supposed that the word "publication" used in the general language modified in any way the word "letter" introduced into the specific enumeration. *Grimm* v. *United States*, 156 U. S. 604; *Andrews* v. *United States*, 162 U. S. 420. *Insurance Co.* v. *Gridley*, 100 U. S. 614, does not involve the rule *ejusdem generis*.

All the dictionaries define beer as an alcoholic beverage obtained by the fermentation of malt or certain other substances. But "intoxicating" appears in no definition. In common acceptation, therefore, beer is an alcoholic but not necessarily an intoxicating beverage. If it contains the usual ingredients of beer, including alcohol, a beverage is *beer* even though the quantity of alcohol is not sufficient to produce actual drunkenness. Nothing else appearing, it could be well said that such a beverage is beer if it contains any alcohol. But, when used by Congress, it has come to have a slightly different meaning. For years, a tax has been levied on "beer, lager beer, ale,

porter, and other similar fermented liquors." Revised Statutes, §§ 3335–3339. From the first the Internal Revenue Department has ruled that the tax applied to all such beverages containing as much as one-half of one per cent. of alcohol. Treasury Decisions 1307, 1360, 2354, 2370 and 2410. Manufacturers acquiesced and paid the tax. Such a beverage containing as much as one-half of one per cent. of alcohol has, therefore, long ago come to be recognized both by the Government and the manufacturers as beer. And Congress has continued from time to time in revenue laws to use the same language and may well be said to have adopted the meaning thus placed upon it. Finally, in the Revenue Act of 1917, passed before the act now in question, and the Revenue Act of 1918, passed later, Congress has expressly described beer as containing one-half of one per cent. or more of alcohol and classed similar beverages containing less as soft drinks. It is clear, then, that when Congress used the word "beer" in the Act of November 21, 1918, it used it in that sense.

*Mr. William L. Marbury*, with whom *Mr. Randolph Barton, Jr.*, and *Mr. William L. Rawls* were on the brief, for defendant in error in No. 458.

*Mr. Elihu Root*, with whom *Mr. William D. Guthrie* was on the brief, for defendant in error in No. 474.

*Mr. Wayne B. Wheeler* and *Mr. Andrew Wilson*, by leave of court, filed a brief as *amici curiæ*.

Mr. Justice Day delivered the opinion of the court.

These causes are here under the Criminal Appeals Act, March 2, 1907, c. 2564, 34 Stat. 1246, and require the construction of the so-called "War-Time Prohibition

Act," of November 21, 1918, c. 212, 40 Stat. 1045, 1046, 1047.

In No. 458 the Standard Brewery, Incorporated, was indicted for unlawfully using certain grains, cereals, fruit, and other food products on the 4th of June, 1919, in the manufacture and production of beer for beverage purposes which, it is charged, contained as much as one-half of one per cent. of alcohol by both weight and volume. In No. 474 the American Brewing Company was indicted for the like use on the 26th day of June, 1919, of certain grains, cereals and food products in the manufacture and production of beer containing a like percentage of alcohol.

In the indictment in No. 474 it was charged that at the time of the alleged offense the termination of demobilization had not been determined and proclaimed by the President.

In each case a demurrer was sustained by the District Court.

Before considering the construction of that portion of the act involved in these cases it will be helpful to give a short history of the preceding legislation that led up to it. The Food Control Act of August 10, 1917, c. 53, 40 Stat. 276, 282, authorized the President to prescribe and give public notice of limitations, regulations, or prohibitions respecting the use of foods, fruits, food materials or feed, in the production of malt or vinous liquors for beverage purposes, including regulations for the reduction of the alcoholic content of any such malt or vinous liquor, in order to assure an adequate and continuous supply of food, and promote the national security and defense. Whenever notice should be given and remain unrevoked no person, after a reasonable time prescribed in such notice, could use any food, fruits, food materials or feeds in the production of malt or vinous liquors, or import any such liquors except under license and in compliance with lawfully prescribed rules and regulations. Under the

authority thus conferred, the President issued various
proclamations. On December 8, 1917, 40 Stat. 1728, he
issued one forbidding the production of all malt liquor,
except ale and porter, containing more than 2.75 per
cent. of alcohol by weight. On September 16, 1918, 40
Stat. 1848, he issued a second proclamation, prohibiting
after December 1, 1918, the production of malt liquors,
including near beer, for beverage purposes, whether or not
such malt liquors contained alcohol. On January 30,
1919, 40 Stat. 1930, he issued a third proclamation which
modified the others to the extent of permitting the use of
grain in the manufacture of non-intoxicating beverages,
it being recited therein that the prohibition of the use of
grain in the manufacture of such beverages has been
found no longer essential in order to assure an adequate
and continuous supply of food. And on March 4, 1919,
40 Stat. 1937, he issued a fourth proclamation amending
his proclamation of September 16, 1918, so as to prohibit
the production only of intoxicating malt liquors for
beverage purposes.

It thus appears that the President, acting under the
Act of August 10, 1917, has reduced the prohibition of
the use of food materials so that now it is limited to
the manufacture of such liquors as are in fact intoxi-
cating.

In the light of all this action we come to consider the
proper construction of so much of the Act of November 21,
1918, as is here involved, which provides:

"That after June thirtieth, nineteen hundred and nine-
teen, until the conclusion of the present war and there-
after until the termination of demobilization, the date of
which shall be determined and proclaimed by the President
of the United States, for the purpose of conserving the
man power of the Nation, and to increase efficiency in the
production of arms, munitions, ships, food, and clothing
for the Army and Navy, it shall be unlawful to sell for

beverage purposes any distilled spirits, and during said time no distilled spirits held in bond shall be removed therefrom for beverage purposes except for export. After May first, nineteen hundred and nineteen, until the conclusion of the present war and thereafter until the termination of demobilization, the date of which shall be determined and proclaimed by the President of the United States, no grains, cereals, fruit, or other food product shall be used in the manufacture or production of beer, wine, or other intoxicating malt or vinous liquor for beverage purposes. After June thirtieth, nineteen hundred and nineteen, until the conclusion of the present war and thereafter until the termination of demobilization, the date of which shall be determined and proclaimed by the President of the United States, no beer, wine, or other intoxicating malt or vinous liquor shall be sold for beverage purposes except for export."

Nothing is better settled than that in the construction of a law its meaning must first be sought in the language employed. If that be plain, it is the duty of the courts to enforce the law as written, provided it be within the constitutional authority of the legislative body which passed it. *Lake County* v. *Rollins*, 130 U. S. 662, 670, 671; *Bate Refrigerating Co.* v. *Sulzberger*, 157 U. S. 1, 33; *United States* v. *Bank*, 234 U. S. 245, 258; *Caminetti* v. *United States*, 242 U. S. 470, 485. Looking to the act we find these are its declared purposes: (1) To conserve the man power of the nation; (2) to increase efficiency in the production of arms, munitions, ships, and food and clothing for the army and navy. To these ends it is made illegal to sell distilled spirits for beverage purposes or to remove the same from bond for such purposes except for export. And after May 1, 1919, until the conclusion of the war, and until demobilization is proclaimed by the President, no grains, cereals, fruit, or other food products are permitted to be used in the manufacture or production of

beer, wine or other intoxicating malt or vinous liquors for beverage purposes.

. The prohibitions extend to the use of food products for making "beer, wine, or other intoxicating malt or vinous liquor for beverage purposes." These provisions are of plain import and are aimed only at intoxicating beverages. It is elementary that all of the words used in a legislative act are to be given force and meaning, *Market Co.* v. *Hoffman*, 101 U. S. 112, 115; and of course the qualifying words "other intoxicating" in this act cannot be rejected. It is not to be assumed that Congress had no purpose in inserting them or that it did so without intending that they should be given due force and effect. The Government insists that the intention was to include beer and wine whether intoxicating or not. If so the use of this phraseology was quite superfluous, and it would have been enough to have written the act without the qualifying words.

This court had occasion to deal with a question very similar in character in the case of the *United States* v. *United Verde Copper Co.*, 196 U. S. 207, where an act permitted the use of timber on the public lands for building, agricultural, mining and other domestic purposes, and held that we could not disregard the use of the word "other" notwithstanding the contention that it should be eliminated from the statute in order to ascertain the true meaning. So here, we think it clear that the framers of the statute intentionally used the phrase "other intoxicating" as relating to and defining the immediately preceding designation of beer and wine. "As a matter of ordinary construction, where several words are followed by a general expression as here, which is as much applicable to the first and other words as to the last, that expression is not limited to the last, but applies to all." Lord Bramwell in *Great Western Ry. Co.* v. *Swindon, etc., Ry. Co.*, L. R, 9 App. Cas. 787, 808.

The declared purpose of Congress was to conserve the nation's man power and increase efficiency in producing war essentials; and it accordingly undertook to prohibit the manufacture of intoxicating liquors whose use might interfere with the consummation of that purpose. Other provisions of the act lend support to this view. The sale and withdrawal from bond of distilled spirits (always intoxicating) were declared unlawful after June 30th, 1919—their manufacture had already been prohibited. The sale of beer, wine and other intoxicating malt or vinous liquors was prohibited after the same date and the importation of all such liquors and also of distilled liquors was made immediately unlawful. The President was empowered at once to establish zones about coal mines, manufactories, ship-building plants, &c., &c., and "to prohibit the sale, manufacture, or distribution of intoxicating liquors in such zones."

The fact that the Treasury Department may have declared taxable under many revenue acts all beer containing one-half of one per centum of alcohol is not important. Such rulings did not turn upon the intoxicating character of the liquid but upon classification for taxation controlled by other considerations. A liquid may be designated as beer and subjected to taxation although clearly non-intoxicating. "The question whether a fermented malt liquor is intoxicating or nonintoxicating is immaterial under the internal revenue laws, although it may be a very material question under the prohibitory laws of a State or under local ordinances." T. D. 804.

As to the insistence that the Internal Revenue Department has determined that a beverage containing one-half of one per cent. of alcohol should be regarded as intoxicating within the intendment of the act before us little need be said. Nothing in the act remits the determination of that question to the decision of the revenue officers of the Government. While entitled to respect,

as such decisions are, they cannot enlarge the meaning of a statute enacted by Congress. Administrative rulings cannot add to the terms of an act of Congress and make conduct criminal which such laws leave untouched. *Waite* v. *Macy*, 246 U. S. 606; *United States* v. *George*, 228 U. S. 14, 20; *United States* v. *United Verde Copper Co.*, 196 U. S. 207, 215.

Furthermore, we must remember in considering an act of Congress that a construction which might render it unconstitutional is to be avoided. We said in *United States* v. *Jin Fuey Moy*, 241 U. S. 394, 401: "A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." See also *United States* v. *Delaware & Hudson Co.*, 213 U. S. 366. We held in *Hamilton* v. *Kentucky Distilleries & Warehouse Co.*, *ante*, 146, that the war power of Congress, as applied to the situation outlined in the opinion in that case, enabled it to prohibit the sale of intoxicating liquor for beverage purposes. But the question was neither made nor decided as to whether Congress could prohibit even in time of war the manufacture and sale of non-intoxicating beverages.

An indictment must charge each and every element of an offense. *Evans* v. *United States*, 153 U. S. 584, 587. We cannot say, as a matter of law, that a beverage containing not more than one-half of one per cent. of alcohol is intoxicating, and as neither indictment so charges it follows that the courts below in each of the cases correctly construed the act of Congress, and the judgments are

*Affirmed.*