## STROH PRODUCTS CO. v. DAVIS, Prohibition Director, et al.

(District Court, E. D. Michigan, S. D. November 11, 1925.)

### No. 911.

1. **Intoxicating liquors ⬤➡70—Prohibition commissioner cannot deny or refuse permit without giving applicant hearing.**

Under National Prohibition Act, tit. 2, § 5 (Comp. St. Ann. Supp. 1923, § 10138½bb), manufacturer of malt beverage was entitled to hearing before its application for permit was refused, or renewal of permit denied.

2. **Intoxicating liquors ⬤➡154(1)—Prohibition Act does not outlaw malt extracts, and permit not authorizing such sale pursuant to internal revenue regulations was not effective to make sale unlawful.**

National Prohibition Act, tit. 2, § 18 (Comp. St. Ann. Supp. 1923, § 10138½i), does not outlaw malt extract preparations, syrups, hops, and fruit juices, such as designated in Internal Revenue Regulation 60, except as they are advertised, designed, or intended for use in manufacture of intoxicants; and hence such regulation, making sale thereof unlawful, is not warranted by law, and a permit to a manufacturer, based on such regulation and not authorizing the manufacturing for sale or selling of such preparations, would not make sale thereof violation of permit.

3. **Intoxicating liquors ⬤➡70—Design or intent that liquid malt should be used in manufacture of intoxicants must be proved as independent fact, or by circumstances authorizing submission to jury.**

Design or intent on part of plaintiff manufacturer, applying for permit, that liquid malt sold by it should be used in unlawfully manufacturing intoxicants, cannot be guessed at or suspected, but must be proved as an independent fact, or by circumstances which would be proper to submit to jury.

4. **Intoxicating liquors ⬤➡71—Design or intent to use liquid malt unlawfully must be that of seller, and not of buyer, to authorize refusal of permit.**

To authorize refusal of permit, design or intent to use liquid malt in manufacture of intoxicants must be the design or intent of the seller, and not of the buyer.

5. **Intoxicating liquors ⬤➡70—Evidence held not to show that manufacturer of liquid malt intended or designed same to be used unlawfully.**

On review of proceeding before prohibition director on application for manufacturer's permit, held, that evidence failed to disclose that plaintiff unlawfully designed or intended that liquid malt sold by it should be used in unlawful manner.

6. **Intoxicating liquors ⬤➡70—Inference that liquid malt was designed for use in manufacture of intoxicants could not be made from intrinsic nature of preparation, or its adaptability therefor.**

The inference that liquid malt was designed for unlawful use in manufacture of intoxicants

could not be made from the intrinsic nature of the preparation, or its adaptability for such use, in absence of evidence of intent.

**7. Intoxicating liquors ⊙⟶70—Presiding officer, at hearing of application for permit, could not consider testimony of witnesses with his past experience with other permittees.**

On a hearing of an application for manufacturer's permit presiding officer did not have the right, in considering testimony of witnesses, to remember his past experiences with other permittees in the same business as the applicant.

**8. Intoxicating liquors ⊙⟶75(7)—Court could not assume presiding officer, at hearing on application for permit, knew permittees with whom he dealt, or proportion of those violating law, or their attitude in dealings with government.**

On review of proceedings before prohibition director on application for manufacturer's permit, court could not assume that presiding officer at such hearing knew permittees with whom he had dealt, and knew proportion of those violating law and their attitude in their dealings with the government.

In Equity. Bill by the Stroh Products Company against James R. Davis, Prohibition Director, and others. Decree for plaintiff.

Stevenson, Carpenter, Butzel & Backus, of Detroit, Mich. (M. J. Donnelly, of Cedar Rapids, Iowa, of counsel), for plaintiff.

Delos G. Smith, U. S. Atty., and Cyril E. Bailey, Legal Adviser, Federal Prohibition Director, both of Detroit, Mich., for defendants.

SIMONS, District Judge. The plaintiff is a manufacturer of ice cream, ice, soft drinks, near beer, malt syrup, and liquid malt. In its manufacture of near beer it uses the so-called dealcoholizing process, and during the years 1922, 1923, and 1924 operated under a permit issued under the provisions of the National Prohibition Law (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.). It also manufactures and sells a liquid barley malt.

[1] Plaintiff applied for a renewal of its permit for the year 1925, but was informed, four or five days before the expiration of its 1924 permit, that its application had been denied. It thereupon filed its original bill of complaint in this court, upon which a temporary restraining order issued. Upon hearing on an order to show cause issued simultaneously therewith, it appeared that no hearing before the Prohibition Director had been given to the plaintiff before the refusal of its application for a permit. This court, believing that under the applicable provisions of section 5 of title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½bb), and upon the authority of Feil Brewing Co. v. Blair (D. C.) 2 F.(2d) 879, the plaintiff was entitled to a hearing before its application was either revoked or a renewal denied, referred the matter back to the prohibition director, with instructions to grant a hearing; the restraining order meanwhile being continued in effect. Subsequently a hearing upon the application of the plaintiff was had before the acting prohibition director, at the close of which he denied plaintiff's application; his action being confirmed by the local prohibition director, and upon review by the Prohibition Commissioner at Washington. The plaintiff then filed its supplemental bill, asking for a review of the proceedings before the acting prohibition director of the district, and of his findings of fact and law filed therein. The stenographic record of the proceedings had was filed as an exhibit in the cause, and additional testimony was taken by both parties to the litigation in this court.

The first point at issue seems to be the nature of this proceeding; the plaintiff contending that, under the rule laid down in O'Sullivan v. Potter (D. C.) 290 F. 844, and Schnitzler v. Yellowley (D. C.) 290 F. 849, this is a hearing de novo, and the controversy is one to be disposed of by the court, on the independent judgment of the court as to the facts and law, while the defendant contends for the rule that this proceeding is in the nature of a bill for review, relying upon Hoell v. Mellon (D. C.) 4 F.(2d) 859, Milwaukee Publishing Co. v. Burleson, 255 U. S. 407, 41 S. Ct. 352, 65 L. Ed. 704, and other cases. Whatever may be the nature of this proceeding, it seems to me that there will be no practical purpose served by a discussion of the point at issue, because (1) both parties to the controversy introduced additional evidence upon the trial in court, neither resting upon the record as made before the acting prohibition director; and (2) the evidence presented in court brought forth no new kind of fact bearing upon the issue, it being on both sides merely cumulative.

We come, then, to the principal issue involved in this proceeding, which concerns itself with the proper interpretation and application of section 18 of title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½i), which reads as follows: "It shall be unlawful to advertise, manufacture, sell, or possess for sale any utensil, contrivance, machine, preparation, compound, tablet, substance, formula, direc-

tion, or recipe advertised, designed, or intended for use in the unlawful manufacture of intoxicating liquor."

The sole ground upon which plaintiff's application was denied is that it sells liquid malt. It is not contended that, in the operation of its dealcoholizing plant, it has in any respect violated the law or the terms of its permit, or the regulations of the department. The report of the inspector sent to investigate the plant discloses that neither the plaintiff nor any member of its company has ever been convicted of a crime or compromised criminal liability, or that they have ever been charged with an offense against the laws of the state, city, county, or federal government relating to liquor, within one year prior to the date of the application, or that any previous application had ever been disapproved, or that applicant had been associated in any capacity with any other business or firm conducted under a permit, or with any other firm or individual applying for a permit; that all plaintiff's commercial records were open to inspection at all reasonable hours; that they contained information enabling an accurate check of liquor and other ingredients used, and showed the names and addresses of persons to whom sold, dates of sale, and quantities sold. The record discloses that the liquid malt sold by the plaintiff contains no alcohol and is unfermented; that it is used in large quantities by the plaintiff in the making of its near beer by the dealcoholizing process; that it is sold in substantial quantities in five-gallon cans to dealers throughout the city, being either delivered by the plaintiff or sold at its plant. There is no evidence of distribution by the plaintiff to private homes.

From plaintiff's liquid malt can be made near beer, either by the dealcoholizing process or by the arrested fermentation process. It can be used in the manufacture of malt vinegar, although the evidence clearly shows that there is very little malt vinegar sold in this market. It has some use in the making of rye bread. It may also be used for the manufacture of intoxicating beer, and, although there is some dispute as to the amount of technical skill required in the making of real beer, the record shows that some technical skill is required. Real beer can also be made from near beer by the addition of yeast and permitting it to ferment. The record also shows that a number of persons purchasing liquid malt endeavored to make beer out of it, and the evidence may warrant the inference that some of them may have succeeded. The city chemist was able to make intoxicating beer by the addition of yeast to the liquid malt. There is no evidence in the record, either before the prohibition director or the court, that the plaintiff advertised that beer could be made from its liquid malt, or that it gave any information, or issued any formula, or intimated in any way by its word or act to any one, that its liquid malt could or might be used in the manufacture of intoxicating beer.

The defendants take the position that they are authorized in refusing a permit on two grounds: First, that the plaintiff violated the terms of its former permit; and, second, that it violated the law in selling liquid malt under the circumstances disclosed by the record.

[2] 1. In determining the validity of the first of these grounds, it is necessary to consider the terms and conditions of plaintiff's 1924 permit, which contains the following paragraph:

"This permit does not authorize the permittee to manufacture for sale, or to sell, wort, malt syrup, malt extract, or similar preparations or compounds from which cereal beverages may be manufactured."

This language was undoubtedly inserted in the permit in the desire of the department to conform to article 32 of Bureau of Internal Revenue Regulation 60, relative to intoxicating liquor, revised March, 1924, which contains the following language:

"The advertisement, sale, etc., of stills, parts of stills, worms or coils, malt, malt extract, or syrup, hops, isinglass, fruit juices, such as grape must, dried fruits and fermentable materials, as well as recipes or formulas for the manufacture of liquor for use in the home or elsewhere for beverage purposes, are prohibited."

If the conditions imposed by the permit, or regulation 60, are warranted by law, then undoubtedly the plaintiff violated both the terms of its permit and the terms of the regulation.

It is, however, my opinion that, while the National Prohibition Act gives to the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, the right to make necessary regulations for the carrying out of the provisions of the act, such regulations must be based upon the law, and cannot supersede its plain terms. Section 18 of title 2 clearly does not outlaw preparations, compounds, or substances, such as designated in regulation 60, except as they are advertised, designed or intended

for use in the unlawful manufacture of intoxicating liquor. To enlarge the prohibition of section 18 by regulation is legislation, not within the power of the Commissioner to enact. United States v. Standard Brewery, 251 U. S. 210, 40 S. Ct. 139, 64 L. Ed. 229; United States v. George, 228 U. S. 14, 33 S. Ct. 412, 57 L. Ed. 712; United States v. Antikamnia Co., 231 U. S. 666, 34 S. Ct. 222, 58 L. Ed. 419, Ann. Cas. 1915A, 49; Oertel v. Gregory (D. C.) 270 F. 789; Waite v. Macy, 246 U. S. 606, 38 S. Ct. 395, 62 L. Ed. 892; Fiedler v. Moss (D. C.) 287 F. 934; Polk v. Page (D. C.) 276 F. 128. It must be clear, therefore, if regulation 60 is not warranted by law, that there is no significance to the mandate of the paragraph quoted from the permit. The language of the permit is of significance only if it is a condition imposed upon the permittee under the provisions of law.

[3] 2. We are brought, therefore, to a consideration of the second ground upon which the permit was denied, namely, whether there was evidence, either before the prohibition director or before the court, of a design or intent on the part of the plaintiff that the liquid malt sold by it should be used in the unlawful manufacture of intoxicating liquor.

The defendants contend that proof of the sale of liquid malt by the plaintiff in large quantities indiscriminately to all purchasers, without inquiry as to whether they possessed permits to manufacture near beer by the dealcoholizing process, added to the fact that some of the persons who bought the plaintiff's product endeavored to make real beer out of it, are circumstances which warrant the prohibition director in drawing the inference that the plaintiff designed and intended its product for the unlawful manufacture of intoxicating liquor.

The leading case interpreting section 18 seems to be that of Nosowitz v. U. S., 282 F. 575 (C. C. A. 2). This case involved the manufacture of a still. The court held: "It has always been the law (unless otherwise prescribed by statute) that to convict one of crime requires the proof of an intention to commit a crime. This statute requires that it be shown that the still is 'intended for use in the unlawful manufacture of intoxicating liquors.' There is no presumption created by the statute which presumes the possession of a vessel that might be used as a still or part of a still to be unlawful. The act of manufacturing must have coupled with it a specific intent to do the wrong denounced in the statute before the defendants may be said to be guilty. Such intent must be proved as an independent fact, or at least circumstances established from which it would be proper to permit a jury to find such intent. There was no proof that the plaintiffs in error intended to manufacture the stills to be used for the unlawful manufacture of liquor. Indeed, all the testimony offered, Grossman's business, and the statements made by the plaintiff in error Simon Nosowitz, show the contrary. The fact that it was possible to use the vessel as a still or a part thereof, is not sufficient."

I am well aware of the fact that the Nosowitz Case was a criminal case, while this proceeding is civil. This does not, however, weaken the authority of the Nosowitz Case in its statement of the law, as applied to section 18 of title 2. Such intent or design must be proved, either as an independent fact or by circumstances which it would be proper to submit to a jury as proof of design or intent. The measure of proof is of course different in a civil proceeding, but the necessity for proof is the same. Design or intent cannot be guessed at or suspected. It must be proved, whether the proof be direct or circumstantial.

[4] A design or intent to use the things sold in an unlawful way must be the design or intent of the seller, and not of the buyer. Hammerle v. United States, 6 F.(2d) 144 (C. C. A. 6); Weinstein v. United States, 293 F. 388 (C. C. A. 1); United States v. Horton (D. C.) 282 F. 731.

[5] A careful search of the evidence taken upon the original proceeding before the prohibition director fails to disclose any evidence whatsoever as to unlawful design or intent on the part of the plaintiff that the malt sold by it should be used in an unlawful manner, and the record is barren of such circumstances as would warrant a logical inference that it had such design or intent. Nothing substantial is added to the proofs in that regard by the testimony taken in court. Were this a proceeding before a jury, I should find no evidence as bearing upon design or intent to submit to the jury. It is true that in the unreported case of United States v. Marx Brewing Company, tried in this court on November 18, 1924, the fact issue of intent or design was submitted to the jury; but in that case there was substantial evidence presented by the government as to certain information given out by the defendant's officers in relation to the suitability of wort for purposes of making

beer. In the present proceeding there is no such evidence.

[6] Defendants contend that there is a marked difference in meaning between the word "designed" and the word "intended," and that the necessity for proof of the violation of the statute in reference to design is satisfied by evidence of the intrinsic nature of the preparation, and its reasonable adaption to the intent or purpose for which it is to be used. Perhaps, if there were some proof of the intent or purpose for which the preparation is to be used, there might be a reasonable inference from the constituency of the preparation that it was designed for that purpose. I fail to see, however, how there can be any such inference in the absence of any proof of intent. It seems to me that whatever difference there may be in the meaning of the words "designed" and "intended" is fully explained by the multiplicity of subjects which the two adjectives serve; it being more natural to say that a still is designed for the manufacture of unlawful liquor, and that a preparation or compound is intended for use in the manufacture of unlawful liquor.

[7, 8] I am not able to follow defendants' argument to the effect that the presiding officer at the hearing had a right, in considering the testimony of the witnesses, to remember the experiences which he has had with permittees who were in the same business as the plaintiff, both before and after the advent of prohibition, and the further argument that the court may assume that the presiding officer as a part of his administrative duties, knows the permittees with whom he has dealt, knows the proportion that have been convicted of abusing their privileges in violating the law, and knows whether their attitude has been one of cooperation and sincerity in their dealings with the government. To me the mere statement of this argument contains its own commentary, and perhaps explains the wisdom of Congress in providing by law for a judicial review of the proceedings before the prohibition director.

I am of the opinion that defendants acted arbitrarily in denying plaintiff's application for a permit, and that such action without substantial evidence that plaintiff violated the law is not warranted by law. They are directed to approve of plaintiff's application for a permit for 1925. Until that is done, the temporary injunction will be continued, and a decree may be entered in conformity with this opinion.