**Russell NESBITT, Appellant,**

**v.**

**UNITED STATES, Appellee.**

Nos. 3572, 3573.

District of Columbia Court of Appeals.

Argued Nov. 2, 1964.

Decided Dec. 22, 1964.

Hershel Shanks, Washington, D. C., for appellant.

Jerome Nelson, Asst. U. S. Atty. with whom David C. Acheson, U. S. Atty. and Frank Q. Nebeker and Barry I. Fredericks, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge:

Appellant was charged by two informations with attempted cruelty to children.[1] After a trial by jury he was found guilty

---

1. Code 1961, § 22–103 provides: "Whoever shall attempt to commit any crime, which attempt is not otherwise made punishable by this title, shall be punished by a fine not exceeding one thousand dollars or by imprisonment for not more than one year, or both."

Code 1961, § 22–901 provides: "Any person who shall torture, cruelly beat, abuse, or otherwise wilfully maltreat any child under the age of eighteen years; or any person, having the custody and possession of a child under the age of fourteen years, who shall expose, or aid and abet in exposing, such child in any highway, street, field, house, outhouse, or other place, with intent to abandon it; or any person, having in his custody or control a child under the age of fourteen years, who shall in any way dispose of it with a view to its being employed as an acrobat, or a gymnast, or a contortionist, or a circus rider, or a rope-walker, or in any exhibition of like dangerous character, or as a begger, or mendicant, or pauper, or street singer, or street musician; or any person who shall take, receive, hire, employ, use, exhibit, or have in custody any child of the age last named for any of the purposes last enumerated, shall be deemed guilty of a misdemeanor, and, when convicted thereof, shall be subject to punishment by a fine of not more than two hundred and fifty dollars, or by imprisonment for a term not exceeding two years, or both."

of attempting to use children under fourteen years of age in acrobatics. He received a sentence of 180 days' imprisonment which was suspended on the condition that he refrain from committing the same offense during the 180-day period.

The evidence at trial established that appellant has been teaching acrobatics as a hobby for the past twenty years. He has taught, among other places, at the Y.M.C.A., the Metropolitan Police Boys Club, the Junior Police Citizens Corps, and the Southeast Neighborhood House. His lessons are free and his students have included men, women and children of all ages. The children, with their parents' permission, receive instruction in tumbling, hand-balancing, pyramids and risley. Appellant testified that in twenty years of teaching none of his students received injuries from tumbling.

Amateur performances by appellant and his pupils in an act known as "The Flying Nesbits" were the basis for the convictions here under review. On one occasion appellant was preparing for a show to benefit school dropouts. To help his students become accustomed to an audience, he arranged a performance at Jimmy McPhail's Golden Room on the evening of December 31, 1963. Mrs. C. W. Charity of the Metropolitan Police Department witnessed the performance and testified that it began at 11:30 p.m., that it lasted about fifteen minutes, and that it consisted of various tumbling exhibits, body-supporting exhibits and pyramids. She identified two girls in the act, thirteen and eight years of age, but admitted they remained in the non-public parts of the establishment except for their performance, and departed shortly thereafter. No apparatus, equipment or swings were used in the act. Appellant did not receive any compensation and the children appeared with their parents' consent.

Mrs. B. C. Smoots of the Metropolitan Police Department also witnessed the performance and corroborated Mrs. Charity's testimony. Mrs. Smoots further testified to a similar performance under appellant's direction at the WUST Music Hall on May 2, 1964. Only the thirteen-year-old girl was identified as a participant. These two performances led to appellant's convictions for attempted cruelty to children.

The statute here in question was enacted in 1885. The meager legislative history discloses that it was promulgated after specific study of the law of New York and was designed for the "protection of children."[2] It rests upon the power of the state, acting as parens patriae, to protect the "physical, mental or moral well-being of the child."[3] The pertinent portion of Code Section 22–901 provides:

> "* * * any person, having in his custody or control a child under the age of fourteen years, who shall in any way dispose of it with a view to its being employed as an acrobat, or a gymnast, or a contortionist, or a circus rider, or a rope-walker, or in any exhibition of like dangerous character, * * * or any person who shall take, receive, hire, employ, use, exhibit, or have in custody any child of the age last named for any of the purposes last enumerated, shall be deemed guilty of a misdemeanor, * * *."

Appellant contends that the statutory phrase "or in any exhibition of like dangerous character" limits the statute to dangerous acrobatics and leaves untouched such activity as simple tumbling. We agree. Sound principles of statutory construction and judicial interpretation require such a result.

In United States v. Standard Brewery, 251 U.S. 210, 40 S.Ct. 139, 64 L.Ed. 229

2. H.R.Rep, No. 1957, 48th Cong., 1st Sess. (1884). See also, Cong.Rec., 48th Cong., 2d Sess. 635 (1885).

3. People v. Ewer, 141 N.Y. 129, 36 N.E. 4, 6, 25 L.R.A. 794 (1894).

(1920), the Supreme Court construed a statute prohibiting the use of food products for making "beer, wine, or other intoxicating malt or vinous liquors for beverage purposes." The Court stated:

" * * * These provisions are of plain import and are aimed only at intoxicating beverages. It is elementary that all of the words used in a legislative act are to be given force and meaning, [Washington] Market Co. v. Hoffman, 101 U.S. 112, 115, 25 L.Ed. 782 [783]; and of course the qualifying words 'other intoxicating' in this act cannot be rejected. It is not to be assumed that Congress had no purpose in inserting them or that it did so without intending that they should be given due force and effect. The government insists that the intention was to include beer and wine whether intoxicating or not. If so the use of this phraseology was quite superfluous, and it would have been enough to have written the act without the qualifying words.

"This court had occasion to deal with a question very similar in character in the case of the United States v. United Verde Copper Co., 196 U.S. 207, 25 Sup.Ct. 222, 49 L.Ed. 449, where an act permitted the use of timber on the public lands for building, agricultural, mining and other domestic purposes, and held that we could not disregard the use of the word 'other' notwithstanding the contention that it should be eliminated from the statute in order to ascertain the true meaning. So here, we think it clear that the framers of the statute intentionally used the phrase 'other intoxicating' as relating to and defining the immediately preceding designation of beer and wine. 'As a matter of ordinary construction, where several words are followed by a general expression as here, which is as much applicable to the first and other words as to the last, that expression is not limited to the last, but applies to all.'

Lord Bramwell in Great Western Railway Co. v. [Swindon & C. Extension] Railway Company, L.R. 9 App.Cas. 787, 808." Id., 251 U.S. at 218, 40 S.Ct. at 140.

We think similar principles of construction apply to the statute at bar. The government contends that "danger" is not an element of the offense and regards the phrase "or in any exhibition of *like dangerous character*" as superfluous. (Emphasis supplied.) We, however, cannot ignore the phrase or eliminate it from the statute. We hold that it directly qualifies the preceding terms and that the acrobatics proscribed by the statute is *dangerous* acrobatics.

Our view is strengthened by the value which society now places on physical fitness. That new and changed conditions may invalidate or require a reinterpretation of a statute was recognized in the recent decision in Galyon v. Municipal Court of San Bernardino Judicial District, Cal.App., 40 Cal.Rptr. 446 (1964). There a father of Siamese twins was charged with exhibiting his sons for hire at the National Orange Show. A section of the California Penal Code, enacted in 1873, prohibited "exhibiting the deformities of another, * * * for hire * * *." In the course of its opinion the court stated:

"The growth of knowledge, increased experiences, breadth and depth of education by the prodigious increase of publications, and exposure to visual processes has changed the concept of public morality in innumerable areas from the concepts in circa 1873. Publications and visual processes today reflect these changes when compared to those available in that earlier era. It entails no extended research to find examples on the public newsstands, public streets and public recreation areas and in store windows which, if compared to the standard of an earlier period, would have been immoral and condemned as such by the public. The very essence and plot of

many cartoons, motion pictures, television shows are deformities which are paid for in one manner or another, are daily distributed to, and viewed by the general public. The general public has accepted them and indeed encouraged them as part of their lives.

"This progression has long since been recognized by the Supreme Court of the United States for it has, in numerous cases wherein the police power is concerned, stated that a statute valid when enacted may become invalid by change in the conditions to which it is applied.

\* \* \* \* \* \*

"The reasonable objective of the statute upon its enactment may have been a valid exercise of the police power but because of the changed conditions during the last 91 years perforce requires us to determine that there is no reasonable objective to be reached by the statute. That there might be regulation of exhibits of abnormalities is not questioned but the prohibition of them is an improper exercise of the police power of the state when superimposed upon public morals and welfare of the present era." Id., 40 Cal.Rptr. at 449.

■ The statute, therefore, even if susceptible of the construction urged by the government, would be open to question because of the change in conditions since the date of its enactment. We note that direct efforts are being made to improve the physical fitness of American youth.[4] "The

vigor of our country is no stronger than the vitality and will of all our countrymen."[5] It has been recognized that strength, stamina, endurance and other desirable physical qualities are best developed through vigorous activity. Were we to adopt the government's view we would condemn the use of the trampoline on the city playground, the stunts and activities which form a part of track meets, and much of the program specifically prescribed in the physical education curriculum of the District of Columbia public schools. Such a construction would be highly unrealistic and unwarranted. We hold that the statute is limited to dangerous acrobatics and that to support a conviction thereunder the government must prove acts of recklessness which endanger life or limb.

■ The evidence presented here wholly fails in that respect. It shows only that the performances consisted of tumbling exhibits, body-supporting exhibits and pyramids. No apparatus, equipment or swings were used in the act and there is nothing in the record to establish danger to life or limb. This court cannot speculate as to the height and form of the pyramids or the nature of the other exhibitions. Since there is insufficient evidence in these cases to establish a reckless disregard for the lives of children under fourteen years of age, the convictions must be reversed. However, our disposition does not give appellant the authority to continue his activities without proper regard for safety.[6]

Reversed with instructions to enter judgments of acquittal.

4. See Exec. Order No. 11074, U.S.Code Cong. and Adm.News 1953, p. 1671, establishing the President's Council on Physical Fitness, January 9, 1963.

5. Presidential Message to the Schools on the Physical Fitness of Youth printed in

Youth Physical Fitness (President's Council on Youth Fitness, July 1961).

6. We find it unnecessary to consider the remaining assignments of error.