Dear Mr. Cassidy:
On behalf of the Jefferson Davis Parish School Board, you have requested an Attorney General Opinion regarding Act. No. 416 of the 2005 Regular Legislative Session, which amended La. R.S.17:15. La. R.S. 17:15 prohibits the hiring of persons who have been convicted of or have plead nolo contendere to a crime listed in La. R.S. 15:587.1(C). La. R.S. 17:15 also requires that local school systems establish procedures for determining whether an applicant or employee has been convicted or pled nolocontendere to such a crime. You question whether the amendments to La. R.S. 17:15 extend the criminal background check requirements to employees of independent contractors or subcontractors performing certain services on school property. In order to determine the scope of the amendments to La. R.S. 17:15, we find it necessary to apply the rules of statutory construction and examine the legislative history and intent of Act. No. 416 (also designated as House Bill 178 of the 2005 Regular Legislative Session).[1]
Prior to being amended, La. R.S. 17:15(A)(1) provided that "[n]o person who has been convicted of or has pled nolocontendere to a crime listed in R.S. 15:587.1(C) shall be hired by a public or private elementary or secondary school system as a teacher, substitute teacher, bus driver, substitute bus driver, janitor, or school employee who might reasonably be expected to be placed in a position of supervisory or disciplinary authority over school children . . ." As originally proposed, House Bill 178 sought to amend La. R.S. 17:15 by qualifying the type of school employee listed in La. R.S. 17:15 as including "any kind" of "temporary, part-time, or permanent" and by including those hired on a "temporary, part-time, or project basis to perform maintenance, construction, or other work for or provide services to the school system or a school." House Committee Amendments to House Bill 178 removed the latter provision and the requirement that the listed positions "might *Page 2 
reasonably be expected to be placed in a position of supervisory or disciplinary authority over school children." Amendments of House Bill 178 also added a new class of those "hired" in subparagraph (A)(1)(b).
La. R.S. 17:15, as amended by Act 416, provides, in pertinent part, as follows:
 Criminal history review
 A.(1)(a) No person who has been convicted of or has pled nolo contendere to a crime listed in R.S. 15:587.1(C) shall be hired by any city, parish, or other local public school board or any nonpublic school or school system as a teacher, substitute teacher, bus driver, substitute bus driver, or janitor, or as a temporary, part-time, or permanent school employee of any kind, unless approved in writing by a district judge of the parish and the district attorney or, if employed on an emergency basis, unless approved in writing by the superintendent of the school system. Any such statement of approval shall be kept on file at all times by the school and shall be produced upon request to any law enforcement officer. Also, not later than thirty days after its being placed on file by the school, the school principal shall submit a copy of any such statement of approval to the state superintendent of education.
 (b) For purposes of this Section, any person employed to provide cafeteria, transportation, or janitorial or maintenance services by any person or entity that contracts with a school or system to provide such services shall be considered to be hired by a school system.
 (c) This Section shall not apply to any nonpublic school or nonpublic school system which contracts with an entity providing any of the services listed in Subparagraph (b) of this Paragraph to a nonpublic school or nonpublic school system when such school or school system determines that the employees of such contractor will have limited contact with students. In determining whether such a contractor's employee will have limited contact with students, the nonpublic school or nonpublic school system shall consider the totality of the circumstances, including factors such as the length of time the contractor's employee will be on the school grounds, whether students will be in proximity with the site where the contractor's employee will be working, and whether the contractor's employee will be working by himself or with others. If a nonpublic school or nonpublic school system has made this determination, it shall take appropriate steps to protect *Page 3 
the safety of any students that may come in contact with such a contractor's employee.
 * * *
 B. Each city, parish, and other local public school board shall establish, by regulation, requirements and procedures consistent with the provisions of R.S. 15:587.1 under which the school systems shall determine whether an applicant, or employee, including any person employed as provided in Subparagraph (A)(1)(b) of this Section, has been convicted of or pled nolo contendere to crimes listed in R.S. 15:587.1(C), except R.S. 14:74. Included in this regulation shall be the requirement and the procedure for the submission of a person's fingerprints in a form acceptable to the Louisiana Bureau of Criminal Identification and Information prior to employment of such person. A person who has submitted his fingerprints to the Louisiana Bureau of Criminal Identification and Information may be temporarily hired pending the report from the bureau as to any convictions of or pleas of nolo contendere by the person to a crime listed in R.S. 15:587.1(C), except R.S. 14:74.
 Emphasis added.
The basic tenets of statutory construction are found in Louisiana Civil Code Articles 9—13 and Title 1, Sections 3-4 of the Louisiana Revised Statutes. They provide as follows:
 Art. 9 Clear and unambiguous law
 When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
 Art. 10 Language susceptible of different meanings
 When the language in the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law.
 Art. 11 Meaning of Words
 The words of a law must be given their generally prevailing meaning.
 Words of art and technical terms must be given their technical meaning when the law involves a technical matter. *Page 4 
 Art. 12. Ambiguous words
 When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole.
 Art. 13. Laws on the same subject matter
 Laws on the same subject matter must be interpreted in reference to each other.
 § 3. Words and phrases; how construed
 Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.
 The word "shall" is mandatory and the word "may" permissive.
 § 4. Unambiguous wording not to be disregarded
 When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.
Our jurisprudence has been historically consistent in applying these rules. The following represent selected quotations from cases we believe are relevant to the issue before us:
David v. Our Lady of the Lake, Inc., 02-2675 (La. 7/2/03),849 So.2d 38:
 Nothing is better settled than that in the construction of a law its meaning must first be sought in the language employed. [citing United States v. Standard Brewery, Inc., 251 U.S. 210, 217, 40 S.Ct. 139, 140, 64 L.Ed. 229 (1920)]
Palmer v. Louisiana State Board of Elementary and SecondaryEducation, 02-2043 (La. 4/9/03), 842 So.2d 363:
 When a law is clear and unambiguous and its application does not lead to absurd consequences, it shall be applied as written, with no further inquiry made in search of the legislative intent. La. C.C. art. 9; La. R.S. 1:4. However, when a law is susceptible of different meanings, `it must be interpreted as having the meaning that best conforms to the purpose of the law.' La. C.C. art. 10. *Page 5 Succession of Boyter, 99-0761 (La. 1/7/00), 756 So.2d 1122:
 The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the legislature to enact the law (citing Fontenot v. Chevron U.S.A., Inc., 95-1425 (La. 7/2/96), 676 So.2d 557.) The rules of statutory construction are designed to ascertain and enforce the intent of the legislature." [citing Stogner v. Stogner, 98-3044 (La. 7/7/99), 739 So.2d 762; State v. Piazza, 596 So2d 817 (La. 1992).]
 * * *
 The statute must therefore be applied and interpreted in a manner which is consistent with logic and the presumed fair purpose and intention of the legislature in passing it. [citing Rodriguez v. Louisiana Med. Mut. Ins. Co., 618 So.2d 390 (La. 1993)] This is because the rules of statutory construction require that the general intent and purpose of the legislature in enacting the law must, if possible, be given effect. (citing Radiofone, Inc. v. City of New Orleans, 93-0962 (La. 1/14/94), 630 So.2d 694; Backhus v. Transit Cas. Co., 549 So.2d 283 (La. 1989); Truscon Steel Co. v. B. T. Const. Co., 170 La. 1083, 129 So. 644 (1930).
In Succession of Boyter, the Louisiana Supreme Court was required to interpret the scope of the application of a statute. In addressing its interpretation of the scope of the application, the court stated, ". . . we must not only analyze the language of the statute, but must also ascertain the legislative intent with respect to its applicability." [citing Sanders v. Department ofHealth Human Resources, 388 So.2d 768 (La. 1980)]
A review of the language and legislative history of La. R.S.17:15(A)(1), as amended by Act 416, indicates that the amendments expand its scope of coverage in three ways: 1. the positions to which it is applicable no longer have to be ones in which an employee "might reasonably be expected to be placed in a position of supervisory or disciplinary authority over school children;" 2. it extends to a larger class of school employees, including those filling any kind of temporary, part-time or permanent position; and 3. it extends to any person employed to provide cafeteria, transportation, or janitorial or maintenance services by any person or entity that contracts with a school or school system to provide such services. The first two ways in which the scope of La. R.S. 17:15(A)(1) has been expanded are evident from the plain language of the statute or lack thereof. The removal of the requirement that an employee might reasonably be expected to be placed in a position of supervisory or disciplinary authority over school children indicates that a criminal history review for all positions or contractors listed in the statute must be performed, regardless of the position or employee's exposure to students.[2] The qualification of the *Page 6 
type of school employee as any kind of temporary, part-time or permanent school employee, from the clear language used, extends the criminal history review to any school employee employed by a local school system.
The third way in which the scope of La. R.S. 17:15(A)(1) has been expanded is that it extends to not only school board employees, but also to employees of contractors that provide cafeteria, transportation, or janitorial or maintenance services. The types of employees of contractors included in this provision must be determined by reviewing the authority of local school boards to employ individuals to perform or to contract for such services and the legislative intent behind this provision. In addressing the privatization or outsourcing of cafeteria, transportation, or janitorial or maintenance services by a local school board, La. Atty. Gen. Op. No. 04-0073 provided as follows:
 La. R.S. 17:84.1, 17:158(A)(4) and 17:82 provide school boards with the authority to employ individuals on the custodial or maintenance staff, as school bus operators, and in the lunch department respectively. Each provision uses the term "may" in reference to the school boards' abilities to create a department or employ individuals for the stated positions. La. R.S. 1:3 states that the word "shall" is mandatory and the word "may" is permissive. The use of permissive language and the absence of use of the word "shall" indicate that school boards are not required to employ such staff.
 Based on the absence of a requirement to employ such staff and the express and implied authority granted to school boards in La. R.S. 17:81, including the power to contract, it is the opinion of this office that school boards have the authority to enter into contracts with private providers for services such as custodial, maintenance and student transportation. This authority, along with the authority granted in La. R.S. 17:195, permits school boards to contract with private providers for cafeteria services as well. However, except as provided in La. R.S. 17:195
regarding the purchase of food only, a contract for cafeteria services is also governed by La. R.S. 17:194(B), which prohibits the use of state funds in a school lunch program that is administered by a for-profit entity.
 * * * *Page 7 
La. R.S. 17:15(A)(1)(a), based on the plain language used, clearly applies to individuals employed by a school board pursuant to La. R.S. 17:84.1, 17:158(A)(4) and 17:82. However, La. R.S. 17:15(A)(1)(b) does not define "cafeteria, transportation, or janitorial or maintenance services." We must therefore ascertain the intent of the legislature in enacting La. R.S. 17:15(A)(1)(b). The testimony of Representative Hutter, the author of House Bill 178, and the ensuing discussion in the House Education Committee on May 24, 2005 indicates that the intent of the legislature was to extend the provision to employees of contractors performing cafeteria, transportation or janitorial or maintenance services that, but for the services being outsourced, would be performed by employees of the school board. In explaining the House Committee Amendments[3] adding subparagraph (A)(1)(b), Representative Hutter, after a brief introduction of the amendment by a House Committee staff member, stated as follows:
 In other words, if you contracted to privatize janitorial service, that person would be included. Some systems privatize cafeteria workers or they privatize janitorial service. So, if you do that, these people would have to be covered as well. In some systems, they have, they hire their own cafeteria workers so they would be included, but this is to include privatized, outsourcing.
When explaining the bill, as amended, Representative Hutter went further to provide:
 What it does is it covers, as I said before, anyone who may come to work at the school system, outsource, privatize, contract workers. For example, in a cafeteria or janitorial service. That's what it does.
When asked by the chairman of the committee to explain to the committee what type of coverage the bill included, Representative Hutter responded:
 They have to have a criminal record check that any other school employees would have to have. Right now, there is no provision in state law for them to be covered by that. This bill will make them have to do that. This amendment will make them have to do that. *Page 8 
Senate Committee amendments to House Bill 178 inserted subparagraph (A)(1)(c) in reference to nonpublic schools, but did not affect the provisions applicable to public school systems. There were no House or Senate floor amendments to House Bill 178. Based on the foregoing, it is the opinion of this office that the individuals covered by La. R.S. 17:15(A)(1)(b) are those that are performing services similar to those that would be performed by individuals employed directly by the school board under La. R.S.17:84.1, 17:158(A)(4) and 17:82. In other words, as Representative Hutter explained in her testimony before the House Education Committee, if a school board privatizes cafeteria, transportation or janitorial or maintenance services, the individuals employed by the contractor are subject to the same criminal history review as those individuals employed directly to perform such services.
I hope this opinion sufficiently addresses your concerns. If I can be of further assistance, please let me know.
Very truly yours,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By: __________________________________ Katherine M. Whitney Assistant Attorney General
CCF, Jr.: KMW
[1] This opinion addresses the responsibilities of local public school boards. The responsibilities of nonpublic schools and nonpublic school systems under La. R.S. 17:15 differ as it relates to contractors.
[2] This is further evidenced by the provisions of La. R.S.17:15(A)(1)(c), wherein nonpublic schools and school systems, as it relates to contractors set forth in Section (A)(1)(b), are required to evaluate if the contractor will have limited contact with students. Factors to be used in such an evaluation are provided in the subparagraph (A)(1)(c) and include the length of time the contractor's employee will be on the school grounds, whether students will be in proximity with students and whether the contractor's employee will be working by himself or with others. When the nonpublic school or nonpublic school system determines that a contractor will have limited contact with students, the provisions of subparagraph (A)(1)(b) do not apply. The removal of the supervisory and disciplinary authority language, in addition to the absence of a provision similar to subparagraph (A)(1)(c) relating to public school systems supports the finding that the position or employee's exposure to students does not affect the requirement that a criminal background check be performed.
[3] House Committee Amendments removed the inclusion in the Original Bill of those hired on a "temporary, part-time, or project basis to perform maintenance, construction, or other work for or provide services to the school system or a school;" removed the requirement that the listed positions "might reasonably be expected to be placed in a position of supervisory or disciplinary authority over school children;" and added a new class of those "hired" in subparagraph (A)(1)(b).